## Virginia Houston v. Town of Waitsfield, et al.

[648 A.2d 864]

No. 93-154

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed August 26, 1994

*Stephen R. Crampton* and *Lucy T. Brown* of *Gravel and Shea,* Burlington, and *David P. Brauer* of *Brauer & Brauer,* Medfield, Massachusetts, for Plaintiff-Appellant.

*Steven F. Stitzel* and *Dianne L. Kenney* of *Stitzel & Page, P.C.,* Burlington, for Defendant-Appellee.

*Jeffrey L. Amestoy,* Attorney General, and *Eileen I. Elliott,* Assistant Attorney General, Montpelier, for amicus curiae.

**Dooley, J.** Plaintiff Virginia Houston appeals from a decision of the Washington Superior Court affirming a denial of her zoning application by the Town of Waitsfield Zoning Board of Adjustment (ZBA).[1] We affirm.

Plaintiff (landowner) owns a 1,631-acre parcel in the Town of Waitsfield and applied for a permit to extract water from an aquifer lying under her property for transportation and eventual sale as bottled water. Her property is zoned agricultural-residential. Under the Waitsfield zoning ordinance, the agricultural-residential zone allows eight uses by right,[2] including agricultural uses, and a similar

---

[1] Following the appeal to the superior court, Robyn Cook-Hubner intervened in the proceedings pursuant to 24 V.S.A. § 4464 as an occupier of property adjacent to landowner's. Cook-Hubner has not submitted a brief in this appeal. Therefore, the parties on appeal are Virginia Houston and the Town of Waitsfield, with the State of Vermont submitting a brief as amicus curiae.

[2] Uses permitted as of right are: (1) one or two family dwelling unit; (2) agricultural and forestry uses; (3) wildlife refuge; (4) cemetery; (5) accessory use; (6) home occupation; (7) multi-family or attached dwelling units in planned unit developments only; and (8) livestock exhibition, training, boarding and student instruction. Town of Waitsfield Zoning Ordinance, art. III, § 3 B.

number of conditional uses.[3] Agricultural uses are further defined as: "The growing or harvesting of crops; raising of livestock; operation of orchards, including maple sugar orchards; the sale of farm produce on the premises where raised; processing or storage of products raised on the property." Town of Waitsfield Zoning Ordinance, art. V, § 13. The ordinance also contains the following restriction: "[A]ny use not expressly permitted in any district is prohibited in that district." *Id.* at art. II, § 4.

On the recommendation of the town zoning administrator, land-owner applied to the Town for a conditional use permit for her planned extraction and storage of water.[4] In October 1991, landowner was given preliminary site plan approval by the town planning commission based on its assessment that her activities fit within the conditional use category of "small-scale processing of raw agriculture or forestry products." Shortly thereafter, the Waitsfield town attorney submitted an opinion letter to the ZBA in which he opined that landowner's proposed use was an agricultural one permitted as of right in her district. As a result of the conflict of opinions, the ZBA considered landowner's application under both permitted and conditional use standards during its January 1992 public hearing on the proposed project. After discussion, the ZBA rejected both theories, and denied landowner's application.

On appeal to the superior court, the parties agreed to limit the issue for decision solely to whether plaintiff's proposed use was an agricultural one. The superior court agreed with the ZBA's conclusion that the extraction of water was not a permitted agricultural use, and therefore, granted summary judgment in favor of the Town. The court did not address whether the landowner's proposal fit within the conditional use category.

Before this Court, plaintiff focuses her arguments on bringing the extraction of natural spring water within the definition of an agricultural use. For example, plaintiff argues that the extraction of water is similar to a traditional agricultural use because water is a renewable

---

[3] Conditional uses, which require approval by the zoning board of adjustment, are: (1) public or private outdoor recreation facility; (2) cultural facility; (3) hotel maximum of [eight] guests; (4) quarry, sand, soil, or gravel pit; (5) lodge [of specific design]; (6) warehouse [of specified structure]; (7) home occupation in an accessory structure; and (8) small-scale processing of raw agriculture or forestry products. Town of Waitsfield Zoning Ordinance, art. III, § 3 C.

[4] Landowner originally planned to build a 50,000-gallon storage tank to hold extracted water for transportation. She later abandoned this plan, proposing instead to pump water directly from the aquifer into 6,500-gallon trucks for transportation.

food product that is cultivated and harvested like any other agricultural product, and water is "raised" quite literally from the ground as one would raise any other crop.

■ Although plaintiff makes a number of creative arguments, we do not find them persuasive. Zoning ordinances are construed according to the general rules of statutory construction. See *Blundon v. Town of Stamford*, 154 Vt. 227, 229, 576 A.2d 437, 439 (1990). Therefore, if the meaning of the ordinance is plain, it will be enforced according to its terms, without need to resort to subordinate rules of construction. See *In re Vermont Nat'l Bank*, 157 Vt. 306, 312, 597 A.2d 317, 320 (1991). Our standard of review of the trial court construction is whether it is clearly erroneous, arbitrary or capricious. See *id.*

■ We cannot conclude that the bottling of natural spring water falls within the plain meaning of the zoning provision allowing an "agricultural" use. The ordinance definition of "agriculture" is traditional and does not specifically include water as an agricultural product. Although the term "agricultural" is given a broader meaning than "farming," see *Jackson v. Building Inspector of Brockton*, 221 N.E.2d 736, 738 (Mass. 1966), its breadth is not so great as to encompass the capture of natural spring waters. We can find no authority to support the broader definition plaintiff seeks. See Annotation, *Construction and Application of Terms "Agricultural," "Farm," "Farming," or the Like, in Zoning Regulations*, 97 A.L.R.2d 702, 706 (1964) (discussing cases defining agriculture, none of which include water harvesting); 3 P. Rohan, Zoning and Land Use Controls § 19.04 (1994) (same).

In his amicus brief, the Attorney General has provided us with an exhaustive description of the various Vermont statutes that use, and often define, the term "agriculture." No use of the term is broad enough to encompass plaintiff's activities. See, e.g., 10 V.S.A. § 331(3) ("'Agricultural products' means crops, livestock, forest products and other farm commodities produced as a result of farming activities."); *id.* § 331(8) ("'Farming' shall mean: the cultivation of land or other uses of land for the production of food, fiber, horticultural, orchard, maple syrup, Christmas trees or forest crops; the raising of livestock, poultry, equines, fish or bees . . . the storage, preparation, retail sale, and transportation of agricultural commodities accessory to the cultivation or use of such land.").

■  In response, plaintiff points out that the Legislature has enacted a special statute providing that the quality of Vermont spring water may now be certified by the Department of Agriculture. See 6 V.S.A. § 2964a. This statute undercuts plaintiff's argument, rather than aiding it, because the Legislature opted for a special recognition scheme rather than including spring water in the preexisting seal of quality program for "agricultural products." See 6 V.S.A. § 2964. The record indicates that the special treatment occurred because the Legislature did not believe water was an agricultural product.[5] Cf. *Muzzy v. Chevrolet Div., Gen. Motors Corp.*, 153 Vt. 179, 188–89, 571 A.2d 609, 615 (1989) (legislative consideration of statutory amendment shows that existing law differs from proposed changes).

■  Plaintiff's proposed use comes closest to the Town's subdefinition of agriculture as "processing or storage of products raised on the property." Landowner proposes to transport, however, not process, natural spring water, which is not a product "raised on the property," but rather a subsurface good extracted from the property much as one would mine or quarry any other subsurface mineral, as the Town and ZBA have suggested. We do not view the word "raised" as meaning "elevated." In an agricultural context, it clearly means "grown." See Random House Dictionary of English Language 1596 (2d ed. unabridged 1987).

■  Nor can we categorize plaintiff's project by the surface resource preservation and farming activities that accompany it. These are secondary or subordinate activities, defined in the zoning ordinance as "accessory" uses, designed to promote the primary use of withdrawing and selling water. They cannot make the primary activity a permitted use.

■  Nor is plaintiff's position substantially aided by the provisions of the town plan that are consistent with her proposed activity. The town plan is generally stated in "broad, general terms" and is "abstract and advisory." *Kalakowski v. John A. Russell Corp.*, 137 Vt. 219, 225, 401 A.2d 906, 910 (1979). The zoning ordinance is the specific regulatory scheme that controls whether the landowner may obtain a permit for land use activity. The ordinance may be, and generally is, narrower than the plan and may not authorize all activities that are

---

[5] This history was before the ZBA in a letter from a state representative who served on the House Agriculture Committee when the proposal came before it.

consistent with the plan. See *Smith v. Town of St. Johnsbury,* 150 Vt. 351, 361, 554 A.2d 233, 240 (1988).

In this case, landowner proposes to create a surface environment that is entirely consistent with the plan's emphasis on preserving open space and scenic resources because this environment is necessary to protect and enhance the aquifer she will tap. The Town is entitled to consider the trade-offs that result from the various methods of implementing the plan's goals and objectives by enacting zoning ordinances. It may decide that the consequences of subsurface activities, and the sale of a subsurface resource, outweigh the benefits of the surface activities, and not allow the type of use landowner proposes.

Plaintiff also challenges the zoning ordinance on the theory that it has resulted in a taking of her property, i.e., the aquifer beneath her land, without compensation in violation of Chapter I, Article 2 of the Vermont Constitution. In addition, plaintiff argues that the ordinance is "clearly unreasonable, irrational, arbitrary, or discriminatory," *In re White,* 155 Vt. 612, 617, 587 A.2d 928, 931 (1990), because it allows similar uses, either as permitted or conditional uses, but fails to allow extraction and sale of water, probably because this land use was not anticipated. We decline to consider these arguments because they were not raised below. See *In re Kostenblatt,* 161 Vt. 292, 301–02, 640 A.2d 39, 45 (1994). Moreover, the takings argument is not ripe because plaintiff has failed to seek a variance from the town and has made no record on how the zoning decision has limited the use of her property. See *Hinsdale v. Village of Essex Junction,* 153 Vt. 618, 627–28, 572 A.2d 925, 930 (1990).

*Affirmed.*