BRUCE WOOD ET AL. *v.* ZONING BOARD OF
APPEALS OF THE TOWN OF
SOMERS ET AL.
(SC 16426)

Sullivan, C. J., and Norcott, Katz, Palmer and Vertefeuille, Js.

Argued February 13—officially released December 4, 2001

*Duncan J. Forsyth,* with whom were *Lawrence J. Golden* and *James W. Sherman,* for the appellants (plaintiffs).

*Carl T. Landolina,* for the appellees (defendants).

*Opinion*

PALMER, J. The plaintiffs, Bruce Wood, David Gavlak and Hillside Spring Water, Inc.[1] (Hillside), appeal from the judgment of the trial court dismissing their appeal from the decision of the named defendant, the zoning board of appeals of the town of Somers (board), upholding the issuance of a cease and desist order[2] prohibiting

---

[1] After the commencement of this action, Hillside Spring Water, Inc., changed its name to Hillside Springs Farm, Inc.

[2] James R. Taylor, the Somers zoning enforcement officer that issued the cease and desist order, also is a defendant in this case.

the collection, storage and transportation of natural spring water from certain property located at 223 Wood Road (subject property) in Somers. On appeal, the plaintiffs claim that the trial court improperly concluded that Hillside's use of the subject property to collect, store and transport spring water was not a permitted use under Somers zoning regulations. The plaintiffs also claim that the trial court, which concluded that Hillside's use of the subject property did not constitute a legal nonconforming use,[3] instead, should have remanded the case to the board for consideration of that issue in light of the board's failure to address it in the first instance. We reject the plaintiffs' claim that the trial court improperly concluded that Hillside's use of the subject property for the collection, storage and transportation of spring water is not a permitted use. With respect to the plaintiffs' nonconforming use claim, however, we agree that the trial court should not have considered that claim because the board failed to address it in the first instance. Accordingly, we reverse the judgment of the trial court in part and remand the case to that court with direction to remand the case to the board for its consideration of the plaintiffs' nonconforming use claim.

The record reveals the following relevant facts and procedural history. Wood owns the subject property, which is known as the Wood farm and which is comprised of 200 acres of land. Gavlak owns and operates Hillside. Since 1991, Hillside has leased a thirty-three acre parcel on the subject property, which contains four natural springs. Hillside collects water from the springs with pipes, through which the water flows by

[3] "A [nonconforming] use is merely an existing use the continuance of which is authorized by the zoning regulations. . . . Such a use is permitted because its existence predates the adoption of the zoning regulations. . . . The plaintiff bears the burden of proving the existence of a nonconforming use." (Citations omitted; internal quotation marks omitted.) *Francini* v. *Zoning Board of Appeals*, 228 Conn. 785, 789, 639 A.2d 519 (1994).

force of gravity into tanker trucks. The water then is transported off the subject property to bottling plants and, ultimately, is sold for human consumption.[4]

The subject property is located in an A-1 zoning district. Under provision 214-98 of the Somers Town Code, farms are expressly permitted in an A-1 zone.[5] Under the Somers Town Code, the term "farm" is defined as "[a] tract of land containing five . . . acres or more, with a minimum of three . . . acres used principally for agricultural purposes";[6] Somers Town Code 214-4; and the term "agriculture" is defined as "[t]he cultivation of land, including planting and harvesting of crops, tillage, horticulture and forestry, and the raising and management of livestock."[7] Id. We note, moreover, that Somers Town Code 214-5 provides in relevant part that "[u]ses that are not expressly permitted are prohibited."

On December 30, 1996, the Somers zoning enforcement officer issued a letter to the plaintiffs: (1) advising them that the collection and storage of spring water on the subject property for transportation off that property is prohibited by Somers zoning regulations; and (2) ordering them to cease and desist from that activity. The plaintiffs appealed to the board pursuant to General Statutes § 8-7,[8] claiming that Hillside's use of the subject

[4] Between 1991 and 1996, the spring water that Hillside collected had been used in swimming pools. Since 1996, however, the water has been used strictly for human consumption.

[5] Single-family detached dwellings, multifamily dwellings limited to two units per lot, and utility lines also are permitted in an A-1 zone. See Somers Town Code 214-98.

[6] The definition of the term "farm" under Somers Town Code 214-4 also provides that "[a] farm may include premises used for the raising and keeping of livestock and other domestic animals when permitted by these regulations." (Internal quotation marks omitted.)

[7] The Somers Town Code also allows other uses upon the procurement of a special use permit. The plaintiffs, however, do not claim that the collection, storage and transportation of spring water constitutes such a special use.

[8] General Statutes § 8-7 provides in relevant part: "An appeal may be taken to the zoning board of appeals by any person aggrieved or by any officer, department, board or bureau of any municipality aggrieved and shall be

property to collect, store and transport spring water is a permitted use because that "activity falls within the scope of agriculture and/or farming."

On April 10, 1997, the board held a public hearing on the plaintiffs' appeal. At the hearing, the plaintiffs maintained that Hillside's collection of spring water for bottling and sale off the subject property is a permitted agricultural use. The plaintiffs claimed alternatively that Hillside's use of the subject property to collect spring water constituted a legal nonconforming use inasmuch as water has been collected from the springs for several hundred years, long before any zoning regulations were in place. On May 8, 1997, the board issued its decision upholding the zoning enforcement officer's issuance of the cease and desist order. The board, however, did not address the plaintiffs' nonconforming use claim.

The plaintiffs appealed from the board's decision to the trial court pursuant to General Statutes (Rev. to 1997) § 8-8 (b).[9] After a hearing, the trial court issued a memorandum of decision in which it characterized as "debatable" the issue of whether the collection, storage and transportation of spring water is a permitted agricultural use within the meaning of Somers Town Code 214-4. The trial court upheld the decision of the board, however, concluding that the plaintiffs had not sustained their burden of proving that the board acted illegally, arbitrarily or in abuse of its discretion in resolv-

taken within such time as is prescribed by a rule adopted by said board, or, if no such rule is adopted by the board, within thirty days, by filing with the zoning commission or the officer from whom the appeal has been taken and with said board a notice of appeal specifying the grounds thereof. . . ."

[9] General Statutes (Rev. to 1997) § 8-8 (b) provides in relevant part: "Except as provided in subsections (c) and (d) of this section and sections 7-147 and 7-147i, any person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located. . . ."

General Statutes (Rev. to 1997) § 8-8 (a) (2) includes "zoning board of appeals" within its definition of the word "board" in § 8-8 (b).

ing that issue as it did.[10] The trial court also concluded that Hillside's use of the subject property for storing, collecting and transporting spring water did not constitute a legal nonconforming use. Accordingly, the court rendered judgment dismissing the plaintiffs' appeal.

The plaintiffs filed a petition for certification to appeal to the Appellate Court from the trial court's judgment pursuant to General Statutes (Rev. to 1999) § 8-8 (o), which the Appellate Court granted. We transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

On appeal, the plaintiffs claim that the trial court improperly concluded that Hillside's use of the subject property for the collection, storage and transportation of spring water is not a permitted agricultural use under the applicable provisions of the Somers Town Code. Alternatively, the plaintiffs maintain that, in view of the board's failure to address their nonconforming use claim, the trial court should have remanded the case to the board for its consideration of that claim. We conclude that the trial court properly rejected the plaintiffs' claim that Hillside's collection and storage of spring water on the subject property for bottling and sale off that property is a permitted agricultural use. We agree with the plaintiffs, however, that the board was required, in the first instance, to determine whether that use constitutes a legal nonconforming use and, consequently, we conclude that the trial court improperly considered that issue.

I

We first address the plaintiffs' claim that the trial court improperly concluded that Hillside's use of the subject property for the collection, storage and trans-

---

[10] In upholding the board's decision, the trial court stated that the board had come "to a reasonable conclusion" in applying the definition of the term "agriculture" under Somers Town Code 214-4 to the facts of the case.

portation of spring water is not a permitted agricultural use under Somers zoning regulations. We are not persuaded by the plaintiffs' claim.

It is undisputed that the subject property is located in an A-1 zone, and that farms are permitted on property that is located in such a zone. As we have indicated, a farm is defined by Somers zoning regulations as a tract of land of five acres or more with a minimum of three acres "used principally for agricultural purposes." Somers Town Code 214-4. For purposes of this appeal, it is undisputed that the subject property comprises more than five acres and, further, that more than three acres of the subject property are used in connection with the collection, storage and transportation of spring water. Consequently, whether Hillside's use of the subject property constitutes a permitted agricultural use devolves into the question of whether the collection, storage and transportation of spring water falls within the meaning of "agriculture" as that term is defined in Somers Town Code 214-4.

Before addressing the merits of the plaintiffs' claim, we set forth the well established standards that govern our review. "Generally, it is the function of a zoning board . . . to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The trial court had to decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts. . . . In applying the law to the facts of a particular case, the board is endowed with . . . liberal discretion, and its action is subject to review . . . only to determine whether it was unreasonable, arbitrary or illegal." (Citations omitted; internal quotation marks omitted.) *Schwartz* v. *Planning & Zoning Commission,* 208 Conn. 146, 152, 543 A.2d 1339 (1988); accord

*Irwin* v. *Planning & Zoning Commission,* 244 Conn. 619, 627–28, 711 A.2d 675 (1998); *Double I Ltd. Partnership* v. *Plan & Zoning Commission,* 218 Conn. 65, 72, 588 A.2d 624 (1991); see also *Pascale* v. *Board of Zoning Appeals,* 150 Conn. 113, 117, 186 A.2d 377 (1962) (on appeal from zoning board's application of regulation to facts of case, trial court must decide whether "the board correctly interpreted the regulation and applied it with reasonable discretion"). Moreover, the plaintiffs bear the burden of establishing that the board acted improperly. E.g., *Bloom* v. *Zoning Board of Appeals,* 233 Conn. 198, 206, 658 A.2d 559 (1995); see *Francini* v. *Zoning Board of Appeals,* 228 Conn. 785, 791, 639 A.2d 519 (1994).

"Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . [A]n agency's factual and discretionary determinations are to be accorded considerable weight . . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when [an] agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . . [I]t is for the courts, and not administrative agencies, to expound and apply governing principles of law." (Internal quotation marks omitted.) *Fullerton* v. *Dept. of Revenue Services,* 245 Conn. 601, 606, 714 A.2d 1203 (1998); accord *Connecticut Assn. of Not-for-Profit Providers for the Aging* v. *Dept. of Social Services,* 244 Conn. 378, 389, 709 A.2d 1116 (1998). These principles apply equally to regulations as well as to statutes. See, e.g., *Fullerton* v. *Dept. of Revenue Services,* supra, 606–607; *Real Estate Listing Service,*

*Inc.* v. *Connecticut Real Estate Commission,* 179 Conn. 128, 138–39, 425 A.2d 581 (1979); *Plastic Distributors, Inc.* v. *Burns,* 5 Conn. App. 219, 224–25, 497 A.2d 1005 (1985). A court that is faced with two equally plausible interpretations of regulatory language, however, properly may give deference to the construction of that language adopted by the agency charged with enforcement of the regulation. E.g., *MacDermid, Inc.* v. *Dept. of Environmental Protection,* 257 Conn. 128, 140, 778 A.2d 7 (2001); *Bridgeport Hospital* v. *Commission on Human Rights & Opportunities,* 232 Conn. 91, 110, 653 A.2d 782 (1995); see *Starr* v. *Commissioner of Environmental Protection,* 226 Conn. 358, 376, 627 A.2d 1296 (1993). Because the application of the Somers zoning regulations to the undisputed facts of this case presents a question of law, our review is plenary.

Finally, zoning regulations are local legislative enactments; see *Spero* v. *Zoning Board of Appeals,* 217 Conn. 435, 441, 586 A.2d 590 (1991); and, therefore, their interpretation is governed by the same principles that apply to the construction of statutes. See, e.g., *Smith* v. *Zoning Board of Appeals,* 227 Conn. 71, 89, 629 A.2d 1089 (1993), cert. denied, 510 U.S. 1164, 114 S. Ct. 1190, 127 L. Ed. 2d 540 (1994); *Double I Ltd. Partnership* v. *Plan & Zoning Commission,* supra, 218 Conn. 73. Thus, in construing regulations, our function is to determine the expressed legislative intent. E.g., *McCrann* v. *Town Plan & Zoning Commission,* 161 Conn. 65, 73, 282 A.2d 900 (1971); see *Smith* v. *Zoning Board of Appeals,* supra, 87. Moreover, regulations must be interpreted in accordance with the principle that a reasonable and rational result was intended; E.g., *Fullerton* v. *Dept. of Revenue Services,* supra, 245 Conn. 612; and the words employed therein are to be given their commonly approved meaning. E.g., *Schwartz* v. *Planning & Zoning Commission,* supra, 208 Conn. 153. With these principles in mind, we now turn to the plaintiffs' claim that

Hillside's use of the subject property for the collection, storage and transportation of spring water is a permitted use under the Somers zoning regulations.

The plaintiffs contend that the collection, storage and transportation of spring water falls within the definition of the term "agriculture" in Somers Town Code 214-4, which is "[t]he cultivation of land, including[11] [the] planting and harvesting of crops, tillage, horticulture and forestry, and the raising and management of livestock." Specifically, the plaintiffs maintain that the collection, storage and transportation of spring water on the subject property for sale off the subject property constitutes "[t]he cultivation of land . . . ." Somers Town Code 214-4.[12] We are not persuaded.

[11] As this court previously has noted, the word "including" may be used either as a word of enlargement or of limitation. E.g., *State* v. *DeFrancesco*, 235 Conn. 426, 435, 668 A.2d 348 (1995); *Maciejewski* v. *West Hartford*, 194 Conn. 139, 147, 480 A.2d 519 (1984). But cf. *Mahoney* v. *Lensink*, 213 Conn. 548, 569, 569 A.2d 518 (1990) ("[t]he legislature's use of the word 'including' rather than the commonly utilized expression, 'shall include,' evinces an intention to provide an expansive interpretation of the . . . [statute]"). The board concedes, however, that the use of the word "including" after the words "cultivation of land" in the definition of "agriculture" in Somers Town Code 214-4 was intended to *extend* the meaning of "cultivation of land" beyond those activities enumerated in the definition. For purposes of this appeal, therefore, we assume that the use of the word "including" in the definition of "agriculture" in Somers Town Code 214-4 suggests that the list of activities that follow, namely, "planting and harvesting of crops, tillage, horticulture and forestry," comprises a sample of the kind of activities that constitute the cultivation of land, and does not necessarily comprise a complete or exhaustive list of those activities.

[12] We note, preliminarily, that the plaintiffs assert that the trial court improperly afforded deference to the board's interpretation of the word "agriculture" as defined in Somers Town Code 214-4 and as applied to the undisputed facts of the present case. In support of this claim, the plaintiffs note that, although the trial court acknowledged that the "definitional issue [was] debatable," it stated that "the board . . . gave the defined terms their natural and plain meaning, and came to a reasonable conclusion." The trial court thereafter concluded that "the plaintiffs ha[d] not established that the board acted illegally, arbitrarily or in abuse of [its] discretion." We acknowledge that some of the language contained in the trial court's memorandum of decision suggests that the court may have afforded deference to the board's interpretation of Somers Town Code 214-4, even though no such

We turn first to the commonly accepted meaning of the relevant terms. "Cultivation" is defined as "the act or art of cultivating: as . . . the art or process of agriculture: TILLAGE [especially]: intertillage to destroy weeds and loosen soil . . . ." Webster's Third New International Dictionary. Because the word "cultivation" is defined by reference to the word "agriculture," that definition is unhelpful, for the very question that we must answer is whether the collection, storage and transportation of spring water constitutes agriculture under Somers Town Code 214-4. In other words, our determination of the scope of the term "agriculture" under Somers Town Code 214-4 is hampered by a definitional circularity: the definition of the word "cultivate," which is used in the definition of the word "agriculture," itself uses the word "agriculture."

The activities enumerated in the definition of agriculture in Somers Town Code 214-4 that serve to exemplify activities constituting "[t]he cultivation of land,"[13] however, do shed light on the intended meaning of that term. "Tillage" is defined in relevant part as the "operation, practice, or art of tilling land . . . ."[14] Webster's Third

deference was appropriate. See, e.g., *Fullerton* v. *Dept. of Revenue Services*, supra, 245 Conn. 606 (when agency's determination of question of law previously has not been subject to judicial scrutiny, agency not entitled to special deference). We need not decide whether the trial court improperly deferred to the board's interpretation of the applicable regulatory provisions, however, because, under the circumstances of the present case, the scope of our review of the trial court's determination regarding the board's decision is plenary. See, e.g., *Union Carbide Corp.* v. *Danbury*, 257 Conn. 865, 871, 778 A.2d 204 (2001) (scope of appellate review is plenary when trial court draws conclusions of law in dismissing appeal from decision of board of assessment appeals); see also *Fullerton* v. *Dept. of Revenue Services*, supra, 606–607.

[13] Specifically, the definition of "agriculture" in Somers Town Code 214-4 furnishes the following examples of activities constituting the cultivation of land: "[the] planting and harvesting of crops, tillage, horticulture and forestry . . . ."

[14] Webster's Third New International Dictionary also defines "tillage" as "the improving of land for agricultural purposes . . . ." This definition, however, does not aid our analysis inasmuch as it uses the term "agriculture"

New International Dictionary. "Till" means "to turn or stir (as by plowing, harrowing, or hoeing) and prepare for seed: sow, dress, and raise crops from . . . ." Id. The collection of spring water differs significantly from tillage in that the latter contemplates the preparation of the soil for the purpose of seeding the land or growing crops. The collection of water from a natural spring requires no such preparation of the soil.

The planting and harvesting of crops also is fundamentally different from the collection of spring water. First, planting denotes putting or setting something in the ground for growth.[15] The collection of spring water, by contrast, does not involve placing something in the ground or removing it therefrom after it has grown. Moreover, "harvest" means "to gather in (a crop): REAP . . . ." Id. "Crop" is defined as "a plant or animal or plant or animal product that can be grown and harvested extensively for profit or subsistence . . . ." Id. Although the collection of spring water requires that the water be gathered in, in a general sense, crops are grown, whereas water, of course, is not.

Like tillage and the planting and harvesting of crops, horticulture and forestry also involve the preparation and use of the soil for the purpose of growing or nurturing some living thing. Because the collection of spring water entails no such use of the soil, it lacks a fundamental characteristic that the activities enumerated in the definition of "agriculture" in Somers Town Code 214-4 share. This distinction between the collection of spring water, on the one hand, and all of the activities enumerated in the definition of "agriculture" in Somers Town Code 214-4, on the other hand, strongly supports the

and, therefore, gives rise to the same definitional circularity that we encounter with the definition of the term "cultivation."

[15] "Plant" means "to put or set in the ground for growth [or] to set or sow with seeds or plants . . . ." Merriam-Webster's Collegiate Dictionary (10th Ed. 1993).

conclusion that the collection of spring water does not constitute "the cultivation of land" and, therefore, is not agriculture within the meaning of Somers Town Code 214-4.[16]

We find further support for this conclusion in *Houston v. Waitsfield*, 162 Vt. 476, 479, 648 A.2d 864 (1994) (*Waitsfield*), in which the Vermont Supreme Court held that extracting water from an underground aquifer for bottling and sale off the premises was not an agricultural use under the applicable zoning regulation.[17] As in the present case, the landowner in *Waitsfield* argued that "the extraction of water [for sale off the property was] similar to a traditional agricultural use because water is a renewable food product that is cultivated and harvested like any other agricultural product . . . ."[18] Id., 478–79.

---

[16] This court previously has held that "the dominant and distinguishing characteristic of [farming], in both the popular and the legal sense of the term, is the cultivation of the soil for the production of crops therefrom." *Chudnov v. Board of Appeals*, 113 Conn. 49, 51–52, 154 A. 161 (1931); cf. *Zoning Commission v. Lescynski*, 188 Conn. 724, 729, 453 A.2d 1144 (1982) (examining common-law definition of farming). In *Chudnov*, we construed a zoning regulation that exempted from restriction the use or erection of buildings in a residential zone for, inter alia, "[f]arming, truck gardening, nurseries or greenhouses." (Internal quotation marks omitted.) *Chudnov v. Board of Appeals*, supra, 51. The plaintiff in *Chudnov* applied for a permit to erect a poultry house in a residential zone. Id. The foregoing activities were not defined in the zoning regulations. See generally id., 51–52. After noting that all of these activities, "[to] a degree, involve[d] the tillage of the soil and production of crops and in that respect [were] not inappropriate to farming in the broad sense"; id., 55; we concluded that the plaintiff's proposed use did not constitute farming within the meaning of the applicable regulation. Id., 56.

[17] Under the applicable zoning ordinance at issue in *Waitsfield*, agricultural uses were defined as "[t]he growing or harvesting of crops; raising of livestock; operation of orchards, including maple sugar orchards; the sale of farm produce on the premises where raised; processing or storage of products raised on the property." (Internal quotation marks omitted.) *Houston v. Waitsfield*, supra, 162 Vt. 478.

[18] The landowner in *Waitsfield*, like Hillside, sought to pump water directly from the underground aquifer into trucks for transportation off the property. *Houston v. Waitsfield*, supra, 162 Vt. 478 n.4.

In rejecting the landowner's claim, the court in *Waitsfield* stated that the extraction and bottling of natural spring water simply did not "[fall] within the plain meaning of the zoning provision allowing an agricultural use . . . [because the] breadth [of the term agricultural] is not so great as to encompass the capture of natural spring waters." (Citation omitted; internal quotation marks omitted.) Id., 479. Both the reasoning and the conclusion of the Vermont Supreme Court, with which we agree, are applicable to the present case.

The plaintiffs assert that General Statutes § 1-1 (q)[19] supports their claim that the collection, storage and transportation of spring water comes within the mean-

---

[19] General Statutes § 1-1 (q) provides: "Except as otherwise specifically defined, the words 'agriculture' and 'farming' shall include cultivation of the soil, dairying, forestry, raising or harvesting any agricultural or horticultural commodity, including the raising, shearing, feeding, caring for, training and management of livestock, including horses, bees, poultry, fur-bearing animals and wildlife, and the raising or harvesting of oysters, clams, mussels, other molluscan shellfish or fish; the operation, management, conservation, improvement or maintenance of a farm and its buildings, tools and equipment, or salvaging timber or cleared land of brush or other debris left by a storm, as an incident to such farming operations; the production or harvesting of maple syrup or maple sugar, or any agricultural commodity, including lumber, as an incident to ordinary farming operations or the harvesting of mushrooms, the hatching of poultry, or the construction, operation or maintenance of ditches, canals, reservoirs or waterways used exclusively for farming purposes; handling, planting, drying, packing, packaging, processing, freezing, grading, storing or delivering to storage or to market, or to a carrier for transportation to market, or for direct sale any agricultural or horticultural commodity as an incident to ordinary farming operations, or, in the case of fruits and vegetables, as an incident to the preparation of such fruits or vegetables for market or for direct sale. The term 'farm' includes farm buildings, and accessory buildings thereto, nurseries, orchards, ranges, greenhouses, hoophouses and other temporary structures or other structures used primarily for the raising and, as an incident to ordinary farming operations, the sale of agricultural or horticultural commodities. The term 'aquaculture' means the farming of the waters of the state and tidal wetlands and the production of protein food, including fish, oysters, clams, mussels and other molluscan shellfish, on leased, franchised and public underwater farm lands. Nothing herein shall restrict the power of a local zoning authority under chapter 124."

ing of the term "agriculture" for purposes of Somers Town Code 214-4. Under § 1-1 (q), the terms "agriculture" and "farming" include "harvesting any agricultural . . . commodity . . . ." The plaintiffs maintain that the collection of spring water satisfies this definition because water is a food and, therefore, an agricultural commodity, and collecting spring water constitutes harvesting. The plaintiffs' argument is unavailing. Whether the collection of spring water falls within the meaning of "agriculture" and "farming" as defined in § 1-1 (q) is irrelevant for our purposes because the term "agriculture" is expressly defined in Somers Town Code 214-4.[20] We, therefore, must ascertain the meaning of the word "agriculture" on the basis of the definition contained in Somers Town Code 214-4 and not by reference to a statutory definition.[21]

The plaintiffs also contend that the passage of Public Acts, Spec. Sess., June 18, 1997, No. 97-11, § 53 (Spec. Sess. P.A. 97-11), which amended General Statutes (Rev. to 1997) § 19a-341 by creating a new subsection

[20] We note, moreover, that General Statutes § 1-1 (q) provides that "[n]othing [t]herein shall restrict the power of a local zoning authority under chapter 124 [of the General Statutes]."

[21] In *Zoning Commission* v. *Lescynski*, 188 Conn. 724, 725, 453 A.2d 1144 (1982), this court considered whether it was permissible, under the zoning regulations of the town of Sherman, to operate a slaughterhouse on premises located in an area of the town that was zoned for farming and residential purposes. The landowners claimed that the operation of a slaughterhouse was a permitted farming use under the applicable zoning regulations. Id., 728. The term "farming" was not defined in those regulations, and the landowners maintained that they were entitled to rely on the definition of that term contained in § 1-1 (q); id., 729; see footnote 19 of this opinion; rather than the common-law definition. See footnote 16 of this opinion. We assumed arguendo that the statutory definition was applicable, but nevertheless rejected the landowners' contention that the operation of a slaughterhouse fell within the purview of § 1-1 (q). *Zoning Commission* v. *Lescynski*, supra, 730. As we already have indicated, § 1-1 (q) does not apply to the present case because the term "agriculture" is defined in the applicable Somers zoning regulation.

(b),[22] indicates the legislature's intent to classify the collection of spring water as an agricultural activity. As we have explained, however, the term "agriculture" is defined in Somers Town Code 214-4 and, therefore, the manner in which that term may be used in the General Statutes has no bearing on our determination of the meaning of the word for purposes of Somers zoning regulations. Moreover, General Statutes § 19a-341 (b) simply provides that an operation to collect spring water that meets certain requirements and complies with all applicable zoning regulations shall not constitute a nuisance. We do not see how such a statutory provision, even if it were pertinent to our interpretation of the Somers zoning regulations, bears any particular relevance to our determination of the meaning of the word "agriculture" in Somers Town Code 214-4.

Thus, we agree with the trial court that Hillside's use of the subject property for the collection, storage and transportation of spring water does not constitute a permitted agricultural use under Somers zoning regulations. We, therefore, conclude that the trial court properly determined that Hillside's collection, storage and transportation of spring water is not a permitted agricultural use.[23]

---

[22] General Statutes § 19a-341, which incorporates the amendments to General Statutes (Rev. to 1997) § 19a-341 by virtue of Spec. Sess. P.A. 97-11, § 53, provides in relevant part: "(b) Notwithstanding any general statute or municipal ordinance or regulation pertaining to nuisances, no operation to collect spring water or well water, as defined in section 21a-150, shall be deemed to constitute a nuisance, either public or private, due to alleged objectionable noise from equipment used in such operation provided the operation (1) conforms to generally accepted practices for the collection of spring water or well water, (2) has received all approvals or permits required by law, and (3) complies with the local zoning authority's time, place and manner restrictions on operations to collect spring water or well water. . . ."

[23] On appeal, the plaintiffs also argue that, even if we conclude that the collection, storage and transportation of spring water is not an agricultural use, that activity takes place on a farm, and, therefore, is permitted. We disagree.

Somers Town Code 214-4 defines "accessory use" as "[a] use of land . . .

## II

We next address the plaintiffs' contention that the trial court improperly addressed the issue of whether Hillside's use of the subject property for the collection, storage and transportation of spring water constitutes a legal nonconforming use. The plaintiffs assert that, because they raised their nonconforming use claim before the board, they were entitled to have the board decide the claim in the first instance. The plaintiffs further assert that the case should be remanded to the board so that it may consider that claim. The defendants concede that the plaintiffs presented their nonconforming use claim to the board and that the board did not address it. The defendants contend, however, that, because the plaintiffs argued the merits of that claim on appeal to the trial court and the trial court decided

which is subordinate or incidental to the principal use of the land," and Somers Town Code 214-98 authorizes such an accessory use on property located in an A-1 zone. Thus, under the Somers zoning regulations, an activity that is not expressly authorized nevertheless is permitted if it is carried on in connection with and incidental and subordinate to a permitted agricultural use. See Somers Town Code 214-4, 214-98; see also *Chudnov* v. *Board of Appeals*, 113 Conn. 49, 52, 154 A. 161 (1931) (at common law, "stock-raising, dairying, and kindred activities are legitimately to be considered as a part of and included within farming when carried on in connection with and incidental and subordinate to tillage of the soil").

The only agricultural uses expressly permitted by the Somers zoning regulations are the cultivation of land and the raising of livestock. Somers Town Code 214-4. The collection and storage of spring water for the purpose of transporting it off the premises to be bottled and sold for human consumption is not connected with and incident and subordinate to those permitted uses. It is, rather, "a distinct and independent business and use." *Chudnov* v. *Board of Appeals*, supra, 113 Conn. 55; see also *Zoning Commission* v. *Lescynski*, 188 Conn. 724, 730, 453 A.2d 1144 (1982) ("[n]othing in [the] . . . language [of § 1-1 (q)] nor in [that statute's] legislative history persuades us that the legislature meant to include within the definition of farming the regular, commercially organized slaughtering of livestock *having no relationship to the farm itself*" [emphasis added]). Accordingly, the plaintiffs cannot prevail on their claim that Hillside's use of a portion of the subject property for the collection, storage and transportation of spring water is permitted merely because some or all of the remaining 200 acres that comprise the subject property are used for agricultural purposes.

that claim on the merits, "the plaintiffs are estopped from seeking a remand [of that issue] to the [b]oard." Alternatively, the defendants contend that the trial court properly rejected the plaintiffs' nonconforming use claim. We agree with the plaintiffs.

In their brief to the trial court on appeal from the board's decision, Gavlak and Hillside argued that the board improperly had failed to address the plaintiffs' claim that Hillside's use of the subject property constituted a legal nonconforming use. Gavlak and Hillside argued alternatively that, contrary to the determination of the trial court, the plaintiffs had established their nonconforming use claim as a matter of law. The fact that Gavlak and Hillside addressed the merits of that claim in support of their alternative argument does not constitute a waiver of their primary argument, namely, that the board was required to address the plaintiffs' nonconforming use claim in the first instance. We, therefore, reject the defendants' contention that the plaintiffs now are estopped from seeking a remand of the case to the board for its consideration of the plaintiffs' nonconforming use claim.

With respect to the merits of the plaintiffs' contention that they are entitled to such a remand, we repeatedly have stated that "[t]he legality of an extension of a nonconforming use is essentially a question of fact. . . . It is well settled that a court, in reviewing the actions of an administrative agency, is not permitted to substitute its judgment for that of the agency *or to make factual determinations on its own.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *Connecticut Resources Recovery Authority* v. *Planning & Zoning Commission*, 225 Conn. 731, 744, 626 A.2d 705 (1993). "Upon appeal the function of the court is [limited] to examin[ing] the record of the hearing before the board to determine whether the conclusions reached are supported by the evidence that

was before [the board]." (Internal quotation marks omitted.) *Farrington* v. *Zoning Board of Appeals*, 177 Conn. 186, 190, 413 A.2d 817 (1979).

In the present case, the board's decision to uphold the zoning enforcement officer's issuance of the cease and desist order was predicated solely on the board's determination that Hillside's use of the subject property for the collection, storage and transportation of spring water "does not fall within the scope of agriculture and/or farming as those terms are defined in the Somers [z]oning [r]egulations . . . ." Thus, the board made no factual findings concerning the plaintiffs' nonconforming use claim and rendered no decision on that claim. In the absence of any such action by the board, the record before the trial court was inadequate for its review of the plaintiffs' nonconforming use claim. Because the board, not the trial court, was required to render a decision with respect to the plaintiffs' nonconforming use claim in the first instance, the trial court improperly decided that claim on the merits instead of remanding the case to the board for its consideration of that claim.[24]

The judgment is reversed in part and the case is remanded to the trial court with direction to remand the case to the board for a determination limited to the issue of whether Hillside's use of the subject property for the collection, storage and transportation of spring water constitutes a legal nonconforming use. The judgment is affirmed in all other respects.

In this opinion the other justices concurred.

---

[24] Of course, either party may obtain Superior Court review of an adverse decision by the board. See General Statutes § 8-8 (b).