RONALD F. MALONE ET AL. *v.* ZONING BOARD
OF APPEALS OF THE TOWN OF WESTPORT
(AC 33123)

Lavine, Alvord and Flynn, Js.

Argued January 31—officially released April 10, 2012

*Robert E. Grant*, for the appellants (plaintiffs).

*Mario F. Coppola*, for the appellee (defendant).

## Opinion

ALVORD, J. The plaintiffs, Ronald F. Malone and Carol D. Malone, appeal from the judgment of the trial court dismissing their appeal from the decision of the defendant, the zoning board of appeals of the town of Westport (board), upholding the cease and desist order issued by the town zoning enforcement officer. The order, dated October 21, 2008, prohibited certain activities on their property located at 6 Cedar Road in Westport. On appeal, the plaintiffs claim that the court improperly concluded that their use of the subject property did not constitute a preexisting, legal nonconforming use. They argue that the court should not have reached that issue because the board failed to address their preexisting nonconforming use claim when it

denied their appeal from the cease and desist order. The plaintiffs claim that the court should have remanded the matter to the board for its factual determinations on that issue. We agree with the plaintiffs and, accordingly, reverse the judgment of the trial court.

The record reveals the following facts and procedural history. Ronald F. Malone acquired the subject property in 1958, and, in 1978, he quitclaimed his interest in the property to Carol D. Malone and himself in survivorship. In 1958, the parcel was split-zoned; approximately 86 percent of the property was located in a residential district and approximately 14 percent was located in a business district. Beginning in 1958, and at all relevant times, the plaintiffs claimed that they operated their garbage, refuse and hauling business from their residence at the subject property and that they parked their commercial vehicles and stored containers and bins utilized in their business at the site. In 1979, Westport's planning and zoning commission amended its zoning regulations and rezoned that portion of the plaintiffs' property located in a business district. Thus, since 1979, the plaintiffs' entire property has been zoned for residential use only.

In the fall of 2008, Susan Reynolds, the town's zoning enforcement officer, issued a cease and desist order to the plaintiffs directing them to discontinue certain uses of their property or face civil penalties pursuant to General Statutes § 8-12. The October 21, 2008 order stated that the plaintiffs' operation of a refuse business and their storage of refuse trucks, business items, garbage and recycling materials in a residential zone violated §§ 13-2, 32-4 and 32-5 of the Westport zoning regulations. The plaintiffs appealed to the board pursuant to General Statutes § 8-7, claiming that all of the uses alleged to be in violation of the regulations were

preexisting, legal nonconforming uses.[1] They did not request a variance.[2]

On January 13 and April 14, 2009, the board held a hearing on the plaintiffs' appeal. The first night of the hearing, the board decided to request a legal opinion from the town attorney advising whether all of the uses that were permitted in a business district in 1958 would have been legally permitted on the entirety of the split-zoned parcel at that time. The second night of the hearing, Laurence Bradley, the town director of planning and zoning, summarized the history of the town's involvement with the plaintiffs' property and stated his position with respect to the issuance of the cease and desist order. He also indicated that the zoning enforcement officer was unable to attend that evening's hearing, but that she had prepared written comments for the board, which she captioned "[m]emorandum," stating her concerns about the matter. Her comments were not discussed at the hearing.

Immediately following Bradley's comments, the town attorney addressed the board members and referred them to the legal opinion that he had submitted into

---

[1] General Statutes § 8-2 (a) provides in relevant part: "The zoning commission of each city, town or borough is authorized to regulate, within the limits of such municipality, the height, number of stories and size of buildings and other structures; the percentage of the area of the lot that may be occupied; the size of yards, courts and other open spaces; the density of population and the location and use of buildings, structures and land for trade, industry, residence or other purposes, including water-dependent uses, as defined in section 22a-93, and the height, size and location of advertising signs and billboards. . . . Such regulations shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations. . . ."

[2] On the board's preprinted form, the plaintiffs crossed out language in the heading pertaining to an application for a variance and typed in language that they were appealing from the "ZEO Decision." Further, in the section of the preprinted form that requested the specific sections of the regulations for which a variance was being sought, the plaintiffs typed: "This is not [a]n application for [a] [v]ariance."

the record. He quickly summarized its contents and advised the members that, in his opinion, the use of each portion of the plaintiffs' lot in 1958 would have been governed and restricted by the regulations for the particular district in which it had been located. In other words, business uses in 1958 were permitted only on the 14 percent of the plaintiffs' property that had been located in the business district. He also noted that the 1958 regulations prohibited junkyards and the storage of "scrap paper, iron, bottles, rags or junk" in both residential and business districts. Accordingly, in his opinion, even if the plaintiffs demonstrated that such uses existed on their property from 1958 and continuously thereafter, those uses would not have been legal in 1958 and could not now be considered valid preexisting nonconforming uses.

The plaintiffs' counsel told the board members that he had read the legal opinion and that he agreed with the conclusion of the town attorney that business uses in 1958 were restricted to that portion of the property located in the business district. He also conceded that the 1958 regulations, and all subsequent regulations, prohibited recycling and commercial refuse operations. He told the board members that the only uses that the plaintiffs were claiming that they had a right to continue at the present time were (1) the storage of their commercial vehicles in that area previously located in the business district, (2) the storage of their business equipment and tools of their trade in that area previously located in the business district and (3) the parking of two garbage trucks in their driveway, which always had been located in a residential district, as a permissible accessory use. In support of those claims, the plaintiffs presented letters from neighboring property owners, an aerial photograph of the property and various maps. Additionally, Ronald F. Malone spoke at the hearing about his use of the property from 1958 through the fall of 2008.

The acting chairperson closed the hearing on April 14, 2009, and indicated that the board would make its decision at a work session to be scheduled at a later date. The board had a policy that no member of the public was allowed to speak at work sessions. The agendas for its work sessions contained the notation: "[T]he public may observe the work session but may not participate."

The work session for the plaintiffs' appeal was held on May 26, 2009. Reynolds' "memorandum" dated April 14, 2009, was discussed by the board members *for the first time* at that work session. Her written comments provided: "It appears to me that [the plaintiffs'] submittal of the information to the [board] regarding the possibility of a pre-existing use is not germane and should be disregarded. The only decision you are being asked to make at this time is whether or not the [cease and desist order] was issued correctly at the time." In the course of the board's discussion, the chairman framed the issue for determination as follows: "[The plaintiffs are] not here for a variance. They [are] here to—for us to decide whether or not, based on the current zoning regulations, was the zoning enforcement officer correct in issuing a cease and desist [order] based on the current regulations." The board members unanimously voted to uphold the decision of the zoning enforcement officer and denied the plaintiffs' appeal.

The plaintiffs appealed from the board's decision to the trial court. See General Statutes § 8-8 (b). After a hearing, the court issued a memorandum of decision on July 27, 2010. The court found that the plaintiffs did not have a vested right to continue the operation of a commercial refuse hauling business or to store commercial vehicles and the tools of their trade at the site. Further, the court determined that the board had considered the plaintiffs' preexisting, legal nonconforming use claim at the public hearing and in its decision to

uphold the issuance of the cease and desist order. Finally, the court concluded that the case of *Wood* v. *Zoning Board of Appeals*, 258 Conn. 691, 784 A.2d 354 (2001), cited by the plaintiffs in support of their claim that the matter should be remanded to the board for factual determinations, was inapposite to their situation because the preexisting, legal nonconforming use issue had been taken into consideration by the board in its decision to uphold the zoning enforcement officer's order. Accordingly, the court dismissed the plaintiffs' appeal. The plaintiffs filed the present appeal from the trial court's judgment after this court granted their petition for certification.

On appeal, the plaintiffs claim that the trial court improperly addressed the issue of whether certain uses on their property constituted preexisting, legal nonconforming uses because the plaintiffs were entitled to have the board decide that issue in the first instance. The board claims that the transcript of the board's hearing on April 14, 2009, clearly demonstrates that the preexisting nonconforming use issue was presented by the plaintiffs and discussed by the board members. The board argues that the town attorney appeared at that hearing and submitted his legal opinion, which had been requested by the board, on that precise issue. It claims that the trial court reviewed the record and agreed with the board that the uses did not constitute preexisting, legal nonconforming uses. We agree with the plaintiffs.

We first set forth the applicable standard of review. "Trial courts defer to zoning boards and should not disturb their decisions so long as honest judgment has been reasonably and fairly exercised after a full hearing. . . . The trial court should reverse the zoning board's actions only if they are unreasonable, arbitrary or illegal. . . . The burden of proof is on the plaintiffs to demonstrate that the zoning board acted improperly." (Internal quotation marks omitted.) *Vine* v. *Zoning*

*Board of Appeals*, 102 Conn. App. 863, 869, 927 A.2d 958 (2007).

In the present case, the plaintiffs appealed to the board from the issuance of Reynolds' cease and desist order. They claimed that they were permitted to continue some of the uses alleged to be in violation of the zoning regulations because they were preexisting, legal nonconforming uses. "A [nonconforming] use is merely an existing use the continuance of which is authorized by the zoning regulations. . . . Stated another way, it is a use . . . prohibited by the zoning regulations but . . . permitted because of its existence at the time that the regulations [were] adopted. . . . [T]he rule concerning the continuance of a nonconforming use protects the right of a user to continue the same use of the property as it existed before the date of the adoption of the [relevant] zoning regulations." (Internal quotation marks omitted.) *Wiltzius* v. *Zoning Board of Appeals*, 106 Conn. App. 1, 25, 940 A.2d 892, cert. denied, 287 Conn. 906, 907, 950 A.2d 1283, 1284 (2008). "The party claiming the benefit of a nonconforming use bears the burden of proving that the nonconforming use is valid." (Internal quotation marks omitted.) *Cumberland Farms, Inc.* v. *Zoning Board of Appeals*, 74 Conn. App. 622, 628, 814 A.2d 396, cert. denied, 263 Conn. 901, 819 A.2d 836 (2003).

The board, as the trier of fact, must determine whether a preexisting nonconforming use is in existence at the time of the appeal to the board. See *Point O'Woods Assn., Inc.* v. *Zoning Board of Appeals*, 178 Conn. 364, 368–69, 423 A.2d 90 (1979). "It is well settled that a court, in reviewing the actions of an administrative agency, is not permitted to substitute its judgment for that of the agency or to make factual determinations on its own." (Internal quotation marks omitted.) *Connecticut Resources Recovery Authority* v. *Planning & Zoning Commission*, 225 Conn. 731, 744, 626 A.2d 705

(1993). In this case, the board did not make a determination as to the plaintiffs' preexisting nonconforming use claim. The board simply denied the appeal and upheld the decision of the zoning enforcement officer "because the [b]oard felt that the cease and desist [order] had been properly issued." No collective statement of reasons for the decision was provided by the board.[3]

Because the board did not issue a formal, collective statement of its reasons for upholding the cease and desist order, both the trial court and this court must search the entire record to find a basis for the board's decision. See *Mountain Brook Assn., Inc.* v. *Zoning Board of Appeals*, 133 Conn. App. 359, 364, 37 A.3d 748 (2012). Here, it is true, as the board argues, that the plaintiffs were allowed to present evidence in support of their claimed preexisting nonconforming uses at the hearing before the board on January 13 and April 14, 2009. Further, the board requested and obtained a legal opinion from the town attorney on that issue. The town attorney and the director of planning and zoning presented their opinions to the board members; questions were asked and answered. The board's decision, however, was not made that evening. It was deferred to a work session held on May 26, 2009.

Although the April 14, 2009 "memorandum" of the zoning enforcement officer was submitted to the board at the April 14, 2009 hearing, her comments were not read into the record nor were they discussed at that time. In the "memorandum," Reynolds expressly stated that it was her opinion that the board should only consider whether the plaintiffs' current use of their property was permitted under the current regulations.[4] Her

---

[3] "[C]ases in which [our Supreme Court has] held that the agency rendered a formal, official, collective statement involve circumstances wherein the agency couples its communication of its ultimate decision with express reasons behind that decision." *Harris* v. *Zoning Commission*, 259 Conn. 402, 420–21, 788 A.2d 1239 (2002).

[4] The April 14, 2009 "memorandum" provided: "It is my understanding that the owners of 6 Cedar Road are appealing the Cease & Desist (C&D)

opinion was discussed for the first time at the May 26, 2009 work session, when no members of the public, including the plaintiffs, were permitted to speak. A review of the transcript of the session clearly indicates that the board members accepted Reynolds' position and recommendation and upheld the issuance of the cease and desist order on that basis.

The transcript of the May 26, 2009 work session is eight pages long. The chairman, in his opening remarks, acknowledged that the board had received "a significant amount of information" from the plaintiffs' counsel and the town attorney, but noted that the plaintiffs had not applied for a variance. He stated that "as comprehensive as [counsel for the plaintiffs'] information was to us, as was [the town attorney's information], that's not the issue in front of us . . . ." The next unidentified board member stated that "had [the plaintiffs] applied for a variance, it would be a different issue . . . . They always have . . . the right to apply for a variance where the majority of what [the plaintiffs' counsel] presented to us, as well as what [the town attorney] presented to us, which both [were] very comprehensive, that would come into play, but that is not the issue. *The issue is whether or not, based on our current zoning regulations, was Susan Reynolds correct on behalf of the town of Westport to issue a cease and desist order."* (Emphasis added.)

---

which was issued but are NOT asking for a variance to be allowed to continue the non-conforming use.

"At the time the C&D was issued, the owners had NOT notified this department that they were going to try to legalize the use as a pre-existing non-conformity. If they had, they would have been told the procedure and enforcement would have been put in abeyance once they submitted the information for us to process.

"It appears to me that their submittal of the information to the [board] regarding the possibility of a pre-existing use is not germane and should be disregarded. *The only decision you are being asked to make at this time is whether or not the C&D was issued correctly at the time.*

"Thank you for the opportunity to comment." (Emphasis added.)

The chairman continued: "[W]hether or not we agree that [the plaintiffs] can operate a business which has been there for many, many years, you know, it's just not relevant to this hearing. That really is a question for an application for a variance which is, again, why they're not here." When a third board member asked about the property having been split-zoned, the chairman responded that whether it had been split-zoned would only be relevant to a variance application. The chairman then referenced Reynolds' written comments dated April 14, 2009, and the third board member stated that he "got it." A fourth board member stated: "The point being, then, that no matter what happened before, this business was not a proper use in [a residential] zone . . . [a]ccording to Sue Reynolds." The chairman agreed and noted that Reynolds had been "a valued member of that department for over twenty years." Further, he again referenced her written comments and stated that the enforcement proceedings would have been held in abeyance if the plaintiffs had applied for a variance.

At that point, the five member board voted on the plaintiffs' appeal and unanimously upheld Reynolds' decision to issue the cease and desist order. Not once during the work session did any member discuss whether the evidence presented by the plaintiffs established that they had the right to continue certain uses on their property as valid preexisting nonconforming uses. As previously mentioned in this opinion, the plaintiffs had abandoned their claims that they could operate a refuse or recycling business at the premises. They did, however, argue that they had the right to continue to park their commercial vehicles in that area previously located in the business district, to store their business equipment and tools of their trade in that area previously located in the business district and to park two garbage trucks in their driveway, which always had

been located in a residential district, as a permissible accessory use. The board did not address those issues. The members addressed only the fact that the plaintiffs had not applied for a variance and repeatedly referenced and relied on the contents of Reynolds' "memorandum."

*Wood* v. *Zoning Board of Appeals*, supra, 258 Conn. 691, is dispositive of this matter. The trial court exceeded the scope of its review by making its own factual determinations with respect to the plaintiffs' preexisting, legal nonconforming use claim. As our Supreme Court stated in *Wood*: "In the absence of any such action by the board, the record before the trial court was inadequate for its review of the plaintiffs' nonconforming use claim. Because the board, not the trial court, was required to render a decision with respect to the plaintiffs' [preexisting] nonconforming use claim in the first instance, the trial court improperly decided that claim on the merits instead of remanding the case to the board for its consideration of that claim." Id., 709.

The judgment is reversed and the case is remanded to the trial court with direction to remand the case to the board for its consideration of the plaintiffs' preexisting nonconforming use claim.

In this opinion the other judges concurred.