[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Debra M. Zimmer, trustee of the Sherry M. Zimmer family trust, appeals from a decision of the defendant, the zoning board of appeals of the town of Greenwich (ZBA). The plaintiff appeals from the ZBA's denial of her appeal from a decision of the zoning enforcement officer (ZEO), denying the plaintiffs application for a building permit for a parcel of property located in Greenwich (the subject premises).[1]
In addition, the plaintiff appeals from the ZBA's denial of the plaintiffs application for a variance of the lot size for the subject premises.
The plaintiff is the owner of both the subject premises and an adjacent lot (lot nine)[2] Both the subject premises and lot nine were formerly located in an R-12 zone; however, in 1969, several years prior to the time that the plaintiff acquired title to these parcels, their zoning designation changed from R-12 to R-20.[3] (Appeal, ¶¶ 2, 22; Return of Record [ROR], Item 28: Notice of zone change dated July 7, 1969, effective July 15, 1969, and map annexed thereto.) The subject premises contains 16, 389 square feet and lot nine contains 16, 179 square feet. (Appeal, ¶¶ 2, 27.) The subject premises is unimproved by any structures, while a residence exists upon lot nine. (ROR, Item 1: Appeal to ZBA, ¶¶ 2, 5(a) — (b), 8.) The plaintiff applied to the ZEO for a building permit to construct a single family residence on the subject premises which the ZEO denied.[4] (Appeal, ¶¶ 9-11; ROR, Item 5: Building permit application; ROR, Item 15: ZEO's letter denying building permit application; ROR, Item 1: Appeal to ZBA, ¶ 1.)
On March 2, 2000, the plaintiff appealed to the ZBA from the ZEO's denial of her application for a building permit for the subject premises. (ROR, Item 1: Appeal to ZBA.) Alternatively, the plaintiff sought a variance from the ZBA on the ground that strict application of the minimum lot area provisions for R-20 zones, as set forth in the Building Zone Regulations of the town of Greenwich (the regulations),[5]
would preclude the plaintiff from building a single family residence on the subject premises and would produce unique and undue hardship because the subject premises is separate and distinct from lot nine, is taxed as a separate lot, and has always existed in its current form. (ROR, Item CT Page 6848 1: Appeal to ZBA, ¶ 5(a) — (b).) In requesting the variance from the ZBA, the plaintiff alleged that the variance would not change the character of the neighborhood because the subject premises is similar in size to at least three other directly abutting properties which have single family residences existing thereon.[6] (ROR, Item 1: Appeal to ZBA, ¶ 5(c).)
On June 7, 2000, the ZBA held a public hearing on the plaintiffs appeal and application for a variance, (ROR, Item 38: Hearing transcript.) and by decision letter dated June 19, 2000, the ZBA unanimously denied both. In its decision letter, the ZBA explained: "After due consideration, the [ZBA] affirms the [ZEO's] action and failure to issue a certification of zoning compliance for the issuance of a building permit as being correct as the applicant [the plaintiff] had failed to complete the required application. Further, the [ZBA] finds the applicant [the plaintiff] failed to articulate a hardship regarding the requested variance of lot size, and that issuance of such variance would be detrimental to the neighborhood and in contravention of the [p]lan of [d]evelopment of the [flown of Greenwich." (ROR, Item 40: Decision letter.)
Thereafter, the plaintiff appealed to this court alleging that the ZBA acted illegally, arbitrarily and in abuse of its discretion in denying the plaintiffs appeal and request for a variance.[7] On July 6, 2001, and on November 5, 2001, this court conducted a hearing on the appeal.[8]
General Statutes § 8-8 governs an appeal taken from a decision of zoning board of appeals to the Superior Court. A statutory right to appeal requires strict compliance with the statutory provisions which create that right. Bridgeport Bowl-O-Rama, Inc. v. Zoning Board ofAppeals, 195 Conn. 276, 283, 487 A.2d 559 (1985). "[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiffs appeal." Jolly, Inc. v. Zoning Board ofAppeals, 237 Conn. 184, 192, 676 A.2d 831 (1996). In the present appeal, the plaintiff alleges that she is statutorily aggrieved because she is the owner of the subject property. A plaintiffs status as owner of the property involved in the zoning board's decision is sufficient to establish aggrievement. Winchester Woods Assoc. v. Planning ZoningCommission, 219 Conn. 303, 308, 592 A.2d 953 (1991); see also General Statutes § 8-8 (a)(1). At an evidentiary hearing held on July 6, 2001, the court found that the plaintiff, as the owner of the subject premises,[9] was aggrieved by the decision of the ZBA.
When the action of a zoning enforcement officer is the subject of an appeal to the zoning board of appeals, the decision of the board and the record before it is reviewed by the court. Caserta v. Zoning Board ofAppeals, 226 Conn. 80, 82, 626 A.2d 744 (1993). The court does not focus CT Page 6849 on the decision of the zoning enforcement officer when reviewing the decision of the board. Id; see also id., 88-89 (zoning board hears and decides appeals from decisions by zoning enforcement officers de novo, and zoning enforcement officer's actions are not entitled to special deference by zoning board or court).
"Generally, it is the function of a zoning board . . . to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The trial court [has] to decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts. . . . In applying the law to the facts of a particular case, the board is endowed with . . . liberal discretion, and its action is subject to review . . . only to determine whether it was unreasonable, arbitrary or illegal." Wood v. Zoning Board of Appeals, 258 Conn. 691,697, 784 A.2d 354 (2001). "Moreover, the plaintiffs bear the burden of establishing that the board acted improperly." Id., 698.
Similarly, "[t]he standard of review on appeal from a zoning board's decision to grant or deny a variance is well established." Bloom v.Zoning Board of Appeals, 233 Conn. 198, 205, 658 A.2d 559 (1995). The trial court must determine whether the board's action was "arbitrary, illegal or an abuse of discretion." Id., 205-06. "The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs." Id., 206.
"Upon appeal the function of the court is [limited] to examin[ing] the record of the hearing before the board to determine whether the conclusions reached are supported by the evidence that was before [the board]." Wood v. Zoning Board of Appeals, supra, 258 Conn. 708-09; see also Conetta v. Zoning Board of Appeals, 42 Conn. App. 133, 138,677 A.2d 987 (1996) ("[t]he court's function is to determine on the basis of the record whether substantial evidence has been presented to the board to support its findings."). "Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing. . . . Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons." (Internal quotation marks omitted.) Bloom v. Zoning Board of Appeals, supra, 233 Conn. 206. However, "[i]f the board fails to give the reasons for its actions, or if its reasons are inadequate, the trial court must search the record to determine whether a basis exists for the action taken" Stankiewicz v.Zoning Board of Appeals, 15 Conn. App. 729, 732, 546 A.2d 919 (1988), aff'd, 211 Conn. 76, 556 A.2d 1024 (1989) (per curiam). CT Page 6850
As noted above, the ZBA unanimously denied the plaintiffs appeal and application for a variance. In its decision letter, the ZBA explained: "After due consideration, the [ZBA] affirms the [ZEO's] action and failure to issue a certification of zoning compliance for the issuance of a building permit as being correct as the applicant [the plaintiff] had failed to complete the required application. Further, the [ZBA] finds the applicant [the plaintiff] failed to articulate a hardship regarding the requested variance of lot size, and that issuance of such variance would be detrimental to the neighborhood and in contravention of the [p]lan of [d]evelopment of the [t]own of Greenwich." (ROR, Item 40: Decision letter.)
The plaintiff appeals from this decision on the ground that the ZBA acted illegally, arbitrarily and in abuse of its discretion by denying her appeal and by not granting a variance. The plaintiff argues that the reason assigned by the ZBA for denying her appeal was invalid in that on the date of the change in the zoning regulations in 1969, the subject premises was a "lawfully existing" lot within the meaning of section 6-141[10] of the regulations and therefore such lawful existence continues to date and allows a building permit to issue for the subject premises. The plaintiff maintains that various rules governing land subdivisions (rules) and a special act function to preserve the subject premises as a separate and valid lot for which a building permit should have issued. She insists that section 6-9[11] of the regulations does not preclude the issuance of such a permit for the subject premises and that even if a building permit was not permitted under the regulations, the ZBA should have granted a variance, the denial of which gives rise to an inverse condemnation and constitutional takings claim. Specifically, the plaintiff alleges that the denial of the permit and variance amounts to an unconstitutional taking of the subject premises under article first, § 11[12] of the constitution of Connecticut and thefifth amendment to the United States constitution.[13]
In response, the ZBA argues, among other things, that the plaintiffs reliance on section 6-141 of the regulations is misplaced. The ZBA contends that a merger has occurred by operation of law because section 6-9 of the regulations is a merger provision which caused the subject premises to merge with lot nine upon the re-zoning of these parcels from R-12 to R-20. According to the ZBA, the merger of these parcels precluded the issuance of a building permit for the construction of a residence on the subject premises and the denial of the plaintiffs appeal from the ZEO was well supported by the evidence, the record and the regulations. Finally, the ZBA contends that it properly denied the plaintiffs application for a variance and that the plaintiffs claim of an unconstitutional taking fails because she cannot meet the requirements of CT Page 6851 establishing such a claim.
 I.
As previously noted, the trial court is to determine on the basis of the record whether there was substantial evidence presented to the ZBA to support its findings. However, "[i]f the [ZBA] fails to give the reasons for its actions, or if its reasons are inadequate, the trial court must search the record to determine whether a basis exists for the action taken." (Emphasis added.) Stankiewicz v. Zoning Board of Appeals, supra,15 Conn. App. 732. In this case, the ZBA's stated reason for rdenying the plaintiffs appeal was that "the applicant had failed to complete the required application." (ROR, Item 40.) The court finds that this reason does not provide an adequate basis for the action taken by the ZBA because the record lacks a clear articulation of the requirements of the application, the source of such requirements and the manner in which the plaintiffs application failed to meet such requirements. Thus, the court must search the record to determine whether another basis exists for the ZBA's action.
After searching the record and reviewing the relevant legal authorities, the court concludes that an adequate basis exists for the ZBA's denial of the plaintiffs appeal. The court finds that pursuant to section 6-9 of the regulations, the subject premises merged with lot nine in 1969, when the zoning designation of these parcels changed from R-12 to R-20; at that time, the owner of the subject premises (Hilda M. Bragg)[14] owned sufficient adjoining property (lot nine) so as to render the parcels, when taken together, one single lot in conformity with the new lot area provisions of Article 1 of the Building Zone Regulations.
Section 6-9 of the regulations provides in relevant part: "No building or land shall be used and no building or part thereof shall be erected or relocated except in conformity with this Article, except that lotsappearing of record in the Greenwich Land Records and made non-conformingin respect of area, lot shape of [sic] frontage by adoption of or anyamendment to this Article or the Building Zone Regulation Map . . . maybe used for residence purposes and accessory buildings or for permittednon-residential purposes, provided the owner of any such lot did not ownsufficient adjoining land at the time such lot became nonconforming toconform with this Article and has not subsequently acquired such adjoining land other than by descent or demise as the result of death of the adjoining owner. . . ." (Emphasis added.)
Significant evidence was presented to the ZBA to support a finding of merger in accordance with section 6-9 of the regulations. The record CT Page 6852 reveals that throughout the relevant portion of the chain of title, both the subject premises and lot nine have been held in common ownership as follows: On October 20, 1941, via two separate deeds, Amelia A. Martin conveyed the subject premises and lot nine to Hilda M. Bragg. Title to both the subject premises and lot nine remained with Hilda M. Bragg from 1941 through 1997. During this period, in 1969, the zoning designation for these parcels changed from R-12 to R-20.[15] (ROR, Item 28: Notice of zone change dated July 7, 1969, effective July 15, 1969, and map annexed thereto.) Thereafter, on June 2, 1997, Edward I. Bragg, as executor of Hilda M. Bragg's estate, conveyed both the subject premises and lot nine to Sherry M. Zimmer via one deed. (ROR, Item 24: Compendium of Applicant's Exhibits.) Finally, on May 2, 2000, Sherry M. Zimmer conveyed both the subject premises and lot nine to the plaintiff in her capacity as trustee of the Sherry M. Zimmer family trust, via a single bargain and sale deed. Each of the aforementioned deeds were duly recorded on the Greenwich land records.
Consequently, the ZBA could have found, from the record before it, that in 1969 there was a merger of lots pursuant to section 6-9 of the regulations because at that time, the subject premises (containing approximately 16, 389 square feet) was "made non-conforming in respect of area," and the then owner of the subject premises, Hilda M. Bragg, owned "sufficient adjoining land," lot nine (containing approximately 16, 179 square feet), to conform with the new minimum lot area requirements of the R-20 zone.[16] Greenwich Zoning Regs. § 6-9. "Once a local zoning authority has found or could have found, from the record before it, that there was a merger of lots, the trial court is restricted to a determination of whether the board's finding of merger was reasonably supported by the record and whether this was a pertinent basis on which to deny the plaintiffs application." (Internal quotation marks omitted.)Marino v. Zoning Board of Appeals, 22 Conn. App. 606, 608, 578 A.2d 165
(1990).
While the evidence presented to the ZBA supports a finding of merger under section 6-9 of the regulations, the court must determine whether this was a pertinent basis on which to deny the plaintiff's application, in light of section 6-141 of the regulations.[17] In that regard, it is important to note that zoning regulations are local legislative enactments and their interpretation is governed by the same principles that apply to the construction of statutes. Wood v. Zoning Board ofAppeals, supra, 258 Conn. 699. "Thus, in construing regulations, the court's function is to determine the expressed legislative intent. . . . Moreover, regulations must be interpreted in accordance with the principle that a reasonable and rational result was intended . . . and the words employed therein are to be given their commonly approved meaning." (Citations omitted.) Id. "[A] court that is faced with two equally CT Page 6853 plausible interpretations of regulatory language properly may give deference to the construction of that language adopted by the agency charged with enforcement of the regulation." Id. "When more than one construction is possible, [a court] should adopt the one that renders the enactment effective and workable and reject any that might lead to unreasonable or bizarre results." Planning Zoning Commission v.Gilbert, 208 Conn. 696, 705, 546 A.2d 823 (1988).
Moreover, in construing two seemingly conflicting regulations, the court is "guided by the principle that the [drafting body] is always presumed to have created a harmonious and consistent body of law."Nizzardo v. State Traffic Commission, 259 Conn. 131, 157, 788 A.2d 1158
(2002). "Legislation never is written on a clean slate, nor is it ever read in isolation or applied in a vacuum. Every new act takes its place as a component of an extensive and elaborate system of written laws. . . . Construing [regulations] by reference to others advances the values of harmony and consistency within the law." Id. Accordingly, "[i]f two [regulations] appear to be in conflict but can be construed as consistent with each other, then the court should give effect to both. . . . If a court can by any fair interpretation find a reasonable field of operation for two allegedly inconsistent [regulations], without destroying or preventing their evident meaning and intent, it is the duty of the court to do so." (Citations omitted; internal quotation marks omitted) Id. Therefore, the court "must, if possible, read the two [regulations] together and construe each to leave room for the meaningful operation of the other." Regulations "must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant." Id., 158.
Furthermore, "[u]nder many zoning ordinances, where a lot became substandard by virtue of the passage of more restrictive zoning regulations, and where that lot was at the time of the passage of that legislation under common ownership with that of an adjacent lot, such zoning regulations have refused to continue to recognize the separate validity of that lot. The common exception of lots which were recorded prior to the effective date of a restrictive ordinance is limited to lots which were in single and separate ownership on that date. Under such a provision, an owner is entitled to an exception only if his lot is isolated. If the owner of such a lot owns another lot adjacent to it, he is not entitled to an exception. Rather, he must combine the two lots to form one which will meet, or more closely approximate, the frontage and area requirements of the ordinance." (Internal quotation marks omitted.)Neumann v. Zoning Board of Appeals, 14 Conn. App. 55, 60, 539 A.2d 614
(1988), cert. denied, 208 Conn. 806, 545 A.2d 1103 (1988).
Applying the foregoing principles to the present case, the record CT Page 6854 before the ZBA supports a reading of section 6-9 as an applicable merger provision, and section 6-141 as a savings provision or an exception that is inapplicable to the subject premises. Section 6-141 of the regulations provides, in relevant part that: "any building, lot or use, lawfully existing on February 1, 1926 or on the effective date of any amendment thereafter of these regulations, may be continued and its nonconforming status shall be deemed lawful, provided that with respect to use the non-conforming use must be actual and not discontinued. . . ." Under the plaintiffs interpretation and application of section 6-141, the subject premises was a "lawfully existing" lot on the date of the change in the zoning regulations and therefore, such lawful existence continues to date and allows a building permit to issue for the subject premises. However, under the plaintiffs construction of section 6-141, section 6-9 is rendered meaningless.[18] In other words, if section 6-141 operates to render an undersized lot lawful for residence purposes in situations where, as here, the owner of such lot "own[ed] sufficient adjoining land at the time such lot became nonconforming to conform with this Article." Greenwich Zoning Regs. § 6-9; then section 6-9 lacks any import. Therefore, the court reads section 6-141 and section 6-9 together, in a manner that gives meaning to both sections. When so construed, section 6-141 applies to protect as lawful only lots held in single and separate ownership, where the owner does not "own sufficient adjoining land at the time such lot became nonconforming to conform with this Article." Greenwich Zoning Regs. § 6-9. The court's reading of these regulations provides the most "workable and effective" result. Planning Zoning Commission v. Gilbert, supra, 208 Conn. 705. Thus, the court finds that section 6-141 of the regulations does not function to protect the subject premises as lawful for the purpose of constructing a residence thereon.
Additionally, the court does not find the plaintiffs reference to the rules and a special act to be dispositive of the issues in this appeal. The authorities cited by the plaintiff are not relevant as to whether a building permit should have issued for the subject premises. In particular, with regard to §§ 3(1)(b) and 3(2)[19] of the rules, the plaintiff points the court to no authority nor has the court found any authority which states that these rules pertain to the subject premises. Furthermore, with regard to § 3(2), the plaintiff only argues that this rule affects zone A and that the subject premises was once located within zone A, without providing any evidence in support of this argument.
The plaintiff also cites § 28 of Special Act 444[20] which states that the commissioner of public works shall "approve all plats and subdivisions in respect to streets, drains and sewers." 23 Spec. Acts 332, No. 444, § 28 (1939). Because the commissioner of public works CT Page 6855 approved the street upon which the subject premises is located and because a map reflecting said approval is on file, the plaintiff argues that the subdivision creating the subject premises is valid. The court, however, interprets § 28 of Special Act 444 to empower the commissioner of public works to approve "streets, drains and sewers," but not to extend this power to the approval of building lots. Accordingly, and because there is substantial evidence in the record which can support the actions of the board, the court cannot sustain the appeal on the basis that the ZBA improperly denied the plaintiffs appeal from the ZEO's decision.
 II.
Turning to the plaintiffs claim that the ZBA improperly denied her request for a variance,[21] the court notes that the law in Connecticut governing variances is well settled. "A variance is authority granted to the owner to use his property in a manner forbidden by the zoning regulations. . . . The power of the board to grant a variance should be used only where a situation falls fully within the specified requirements. . . . Thus, the power to grant a variance should be sparingly exercised." Reid v. Zoning Board of Appeals, 235 Conn. 850,857, 670 A.2d 1271 (1996); see generally General Statutes § 8-6;[22]
Greenwich Zoning Regs., § 6-19.[23]
"[T]he granting of a variance must be reserved for unusual or exceptional circumstances. . . . An applicant for a variance must show that, because of some peculiar characteristic of his property, the strict application of the zoning regulation produces an unusual hardship, as opposed to the general impact which the regulation has on other properties in the zone." (Citations omitted; internal quotation marks omitted.)Bloom v. Zoning Board of Appeals, supra, 233 Conn. 206-07. Accordingly, our Supreme Court has interpreted General Statutes § 8-6 to authorize a zoning board of appeals to grant a variance only when two basic requirements are satisfied: "(1) the variance must be shown not to affect substantially the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan." Id., 207, quoting Grillo v. Zoning Board of Appeals,206 Conn. 362, 368, 537 A.2d 1030 (1988); accord Giarrantano v. ZoningBoard of Appeals, 60 Conn. App. 446, 454, 760 A.2d 132 (2000).
With regard to the first basic requirement, during the public hearing conducted by the ZBA on June 7, 2000, arguments were made and evidence was presented to the ZBA on the issue of whether the variance of lot size requested by the plaintiff would "substantially affect the comprehensive zoning plan."[24] Bloom v. Zoning Board of Appeals, supra, 233 Conn. 207;Grillo v. Zoning Board of Appeals, supra, 206 Conn. 368. However, during CT Page 6856 the public hearing, a significant portion of the variance discussion was directed towards the second basic requirement, namely, whether the plaintiff demonstrated that strict adherence to the regulations caused "unusual hardship." Bloom v. Zoning Board of Appeals, supra, 207; Grillov. Zoning Board of Appeals, supra, 368.
Specifically, the plaintiff, through his attorney, stated at the public hearing that "[t]he ultimate hardship here is [that the plaintiff is] losing a valuable lot [the subject premises] that has existed for a long period of time. . . . It makes it difficult to sell the property [lot nine] with the fact there's the additional lot [the subject premises] because a property owner doesn't necessarily want to buy the additional lot [the subject premises]. They simply want to buy the property with the house on it [lot nine]. So it creates some confusion and makes it difficult to sell the property. That's not the primary hardship. The primary hardship is that you have got a loss of a valuable building lot [the subject premises]." (ROR, Item 38: Hearing transcript, p. 79.) Furthermore, the plaintiffs attorney stated that "[t]he hardship is not . . . the fact that the property was rezoned, the area was rezoned in 1969. The hardship is loss of a lot [the subject premises] that existed prior to that and which has always existed in this present format. You're losing a valuable lot [the subject premises] that has always existed for over a period of 60 years. You can't do anything about that land. You can't build a house on it. That's the hardship, not the fact that the upzoning occurred." (ROR, Item 38: Hearing transcript, p. 149-50.) Additionally, the plaintiffs attorney stated that "the basis for granting the variance is that this lot [the subject premises] has been shown on a map, the lot lines have never changed for 60 years. And there's loss of a lot to [the plaintiff], and [the subject premises] is a 16,000 square foot lot which is lost to [the plaintiff] as a building lot. That's the hardship." (ROR, Item 38: Hearing transcript, p. 166.)
The court notes that "[p]roof of exceptional difficulty or unusual hardship is absolutely necessary as a condition precedent to the granting of a zoning variance. . . . A mere economic hardship . . . however, is insufficient to justify a variance . . . and neither financial loss nor the potential for financial gain is the proper basis for granting a variance." (Citations omitted; internal quotation marks omitted.) Bloomv. Zoning Board of Appeals, supra, 233 Conn. 207-08; see also Norwood v.Zoning Board of Appeals, 62 Conn. App. 528, 536-37, 772 A.2d 624 (2001) (where plaintiff claimed town's practice of separately taxing two lots under common ownership without allowing construction of dwelling on one such lot was hardship, court concluded that claimed hardship was insufficient to support granting of a variance, "in that it merely alleged the financial loss occasioned by the town's separate taxation of the lots.") Furthermore, mere "[d]isappointment in the use of property CT Page 6857 does not constitute exceptional difficulty or unusual hardship. . . ."Jaser v. Zoning Board of Appeals, 43 Conn. App. 545, 548, 684 A.2d 735
(1996), citing Krejpcio v. Zoning Board of Appeals, 152 Conn. 657, 662,211 A.2d 687 (1965).
In light of the foregoing, the court concludes that the ZBA's denial of the plaintiffs request for a variance, for the reason that the plaintiff "failed to articulate a hardship regarding the requested variance of lot size"; (ROR, Item 40: Decision letter); was not arbitrary, illegal or an abuse of discretion. The court finds that the plaintiffs claim that the subject premises would be difficult to sell, that the plaintiff stands to lose a valuable building lot, and that the subject premises is taxed separately from lot nine, do not constitute hardship sufficient to support the granting of a variance. Specifically, the court finds that the "hardship" claimed by the plaintiff is insufficient in that it merely asserts a disappointment in the use of the property and an economic or financial loss, or, if the variance were granted, a potential for financial gain. Therefore, the court finds that the ZBA's reason for denying the plaintiffs request for a variance was amply supported by the record and pertinent to the considerations which the ZBA was required to apply under the General Statutes, the case law and the zoning regulations.
 III.
With regard to the plaintiffs inverse condemnation or constitutional takings claim, preliminarily the court notes that "[i]nverse condemnation occurs when there has been a taking, without compensation, for a public purpose, without an actual or physical appropriation of property. . . . The question here is whether the acts of the agency are sufficient to equate to a taking." (Citations omitted.) Citino v. RedevelopmentAgency, 51 Conn. App. 262, 277, 721 A.2d 1197 (1998). A taking occurs "by a substantial interference with private property which destroys or nullifies its value or by which the owner's right to its use or enjoyment is in a substantial degree abridged or destroyed." AF Construction,Inc. v. Zoning Board of Appeals, 60 Conn. App. 273, 279, 759 A.2d 101
(2000).
In the context of the denial of a variance, "[t]he plaintiff may prevail on his claim of a constitutional deprivation if the board's denial . . . constituted a taking, either as a practical confiscation of his property or by application of a balancing test. . . . As [the Connecticut Supreme Court has] recently reiterated . . . the plaintiff is not entitled to judicial review of the merits of his regulatory takings claim until he has met the requirement of establishing the finality of the agency determination. . . . To demonstrate the requisite finality, a CT Page 6858 property owner asserting a regulatory takings claim bears the burden of proving that the relevant government entity will not allow any reasonable alternative use of his property." Id.
Similarly, the United States Supreme Court requires a property owner to obtain "a final decision regarding the application of the zoning ordinance and subdivision regulations to its property, [prior to analyzing a takings claim, otherwise] it is impossible to tell whether the land retains any reasonable beneficial use or whether existing expectation interests have been destroyed." (Brackets omitted; internal quotation marks omitted.) MacDonald, Sommer Frates v. Yolo County,477 U.S. 340, 349, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986).
Prior to making a determination as to whether a landowner has been deprived of property without just compensation, "the court must first define the property interest that has allegedly been taken." Bauer v.Waste Management of Connecticut, Inc., 234 Conn. 221, 253, 662 A.2d 1179
(1995). The plaintiff urges the court to view the subject premises standing alone as the subject of her takings claim. The court, however, has previously determined that the subject premises and lot nine have merged. Thus, the court will view the takings claim as it relates to the subject premises and lot nine taken together.
Applying the principles of finality to the present case, the court finds that the plaintiff has not established the requisite finality required under Connecticut or United States Supreme Court case law. During the hearing on this issue, Timothy Girian, a real estate appraiser, testified that his appraisal value of the subject premises and lot nine taken together is $1,325,000.00. Girian additionally testified that to the extent the regulations permit the building of accessory structures, such structures would enhance the value of the subject premises and lot nine, collectively. Section 6-95[25] of the regulations, enumerates the types of accessory structures permitted in the R-20 zone. The plaintiff has not applied to utilize the subject premises and lot nine in any of the enumerated ways, nor has the plaintiff shown that the relevant government entity has prohibited any of the alternative uses detailed in the regulation. The board simply did not permit the building of a single family residence on the subject premises. In addition, there was evidence presented at the hearing on this issue that the plaintiff could potentially seek approval to build a pool or cabana on the subject premises.
The property owner bears the burden of proving that the relevant government entity will not allow any reasonable alternative use of his property and that such decision is final. Gil v. Inland Wetlands Watercourses Agency, 219 Conn. 404, 406, 593 A.2d 1368 (1991). CT Page 6859 Furthermore, "[in] most cases, a property owner must do more than submit one plan to an agency in order to establish that the agency's decision is `final' for the purposes of the takings clause." Port Clinton Associatesv. Board of Selectmen, 217 Conn. 588, 607, 587 A.2d 126 (1991). In this case, the plaintiff only submitted one application to build a single family residence. The plaintiff has not shown that additional applications to build or install accessory structures would not be approved. Further applications may provide the plaintiff with other uses for the land which includes lot nine and the subject premises. Thus, the court finds that the plaintiffs failure to establish that no reasonable alternative use for the property remains amounts to a failure to meet the finality requirement necessary for judicial review of its constitutional takings claim.
While the court need not reach the merits of the constitutional takings claim, it will address the fact that the plaintiffs claim would similarly fail under the practical confiscation or balancing tests. "A practical confiscation occurs when a landowner is prevented from making any beneficial use of its land — as if the government had, in fact, confiscated it. . . . [it] does not occur when the landowner cannot take advantage of a myriad of uses acceptable under the applicable regulations. . . ." Bauer v. Waste Management of Connecticut, Inc., supra, 234 Conn. 256 (1995). Even though falling short of "practical confiscation," that is, "total deprivation of property rights," there is a regulatory taking if the property is deprived of any "reasonable and proper use." Citino v. Redevelopment Agency, supra, 51 Conn. App. 277-78, citing Luf v. Southbury, 188 Conn. 336, 342, 449 A.2d 1001 (1982). As stated in the finality discussion, the subject premises and lot nine have value. Therefore, the plaintiff has not been deprived of any reasonable use for her property. See Mulkerrin v. Planning Zoning Commission, Superior Court, judicial district of Stamford, Docket No. 166711 (July 6, 1999, Karazin, J.) ("a practical confiscation did not occur since the landowners can still make valuable use of their land.")
Moreover, the plaintiff may also sell the subject premises to any adjoining neighbors. These neighbors may have an interest in owning property as a buffer between their land and lot nine or may want to develop the land in a manner consistent with the regulations. Thus, the plaintiffs claim does not meet the requirements of the practical confiscation test because there are a number of reasonable alternative uses for her property, notwithstanding the zone change.
Similarly, the plaintiffs takings claim fails under the balancing test which requires a weighing of private and public interests. See Bauer v.Waste Management of Connecticut, Inc., supra, 234 Conn. 256. "Short of regulation which finally restricts the use of property for any reasonable CT Page 6860 purpose resulting in a `practical confiscation,' the determination of whether a taking has occurred must be made on the facts of each case with consideration being given not only to the degree of diminution in the value of the land but also to the nature and degree of public harm to be prevented and to the alternatives available to the landowner." Id. In other words, the "balancing test requires that the trial court consider (1) the degree of diminution in value of the particular piece of property, (2) the nature and degree of the public harm to be prevented and (3) the realistic alternative uses available to the landowner." D'Addariov. Planning Zoning Commission, 25 Conn. App. 137, 143, 593 A.2d 511
(1991).
As to diminution in value, evidence was admitted in the form of an "offer to purchase" that illustrated that the plaintiff had been offered $800,000 for the subject premises, if a single family residence could be thereon. The appraiser provided an appraisal value of $250,000 for the subject premises without the ability to build a residence upon it. This amounts to a diminution in value of $550,000 or 68.75%. This diminution is a direct result of the merger of the subject premises and lot nine under the previously discussed regulations. While this diminution appears to be significant, diminution alone is not dispositive under the balancing test. See Primerica v. Planning Zoning Commission,211 Conn. 85, 98, 558 A.2d 646 (1989) ("[m]ere reduction in value will not suffice for a claim of confiscation."). Without deciding at which percentage the line between confiscation and non-confiscation ought to be drawn, the court finds that the reduction in value in this case does not constitute confiscation.
The court must also weigh this private interest against the potential public harm sought to be prevented. There was testimony before the board at the hearing on this matter which reveals the potential public harm. Specifically, Bruce Cohen, the attorney for the plaintiffs neighbors showed that there are twenty lots with frontage on the plaintiffs street and that if the subject premises is viewed separately and issued a building permit, this would establish a precedent where five similarly undersized lots would also be able to obtain building permits, significantly changing the character and appearance of the neighborhood. When this public harm is weighed against the plaintiffs private loss, the court finds that the public harm outweighs the private.
Finally, the court must consider whether there are realistic uses available to the plaintiff As previously found, the plaintiff has a number of alternative uses for the property.[26] The court finds that the plaintiffs claim fails under the balancing test and thus, whether analyzed under the practical confiscation or the balancing tests, the plaintiff has not suffered a regulatory taking. CT Page 6861
For all the reasons set forth above, the plaintiffs appeal is dismissed.
So Ordered.
 ___________________ D'ANDREA, J.T.R.