# STATE OF VERMONT

# ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| In re: Sisters & Brothers Invest. Group, LLP | } | Docket No. 106-5-06 Vtec |
| Site Plan Application Appeal | } | |

## Interim Decision on Pending Motions

Applicant Sisters and Brothers Investment Group, LLP ("Applicant" or "SBI") appealed from the Decision of the Town of Colchester ("Town") Development Review Board ("DRB") dated April 26, 2006, approving SBI's site plan, with conditions. Cross-Appellant Cumberland Farms, Inc. ("Cumberland Farms") also appealed. SBI is represented by David H. Greenberg, Esq.; Cumberland Farms is represented by Jon T. Anderson, Esq. and David W. Rugh, Esq.; the Town is represented by Richard C. Whittlesey, Esq.; and Interested Person Fanny Allen Corporation represents itself, through the Chair of its Board of Directors, Sister Irene Duchesneau.

Now pending are the cross-motions for summary judgment filed by SBI and Cumberland Farms, and the additional motion for partial summary judgment filed by Cumberland Farms.

The pending motions seek favorable rulings under all of the issues preserved for our review in this de novo appeal. For purposes of clarity, we have categorized the thirteen issues raised by the parties' respective Statements of Questions into the following general topics:

- (A) whether the zoning regulations in effect in 2002 or those in effect in 2005 apply to the pending site plan application (Applicants' Questions 1–2 and Cumberland Farms' Questions 1, 3, 4, and 5);

- (B) how to interpret the provisions in either the old or new zoning regulations limiting convenience stores to "2,000 square feet" (Applicants' Questions 3–7, inclusive); and

- (C) general conformance with the site plan criteria, with a specific emphasis on how to classify Applicant's proposed gasoline pump canopy (Cumberland Farms' Questions 2, 6, and 7).

The parties appear to be in agreement about the material facts concerning the issues preserved for review in the pending site plan application. But a vigorous dispute exists over how the ordinance provisions, case law and other legal precedent should be applied to those material facts. To the extent that a dispute has been revealed as to some material facts, we have viewed

those facts in a light most favorable to the party who is opposing the summary judgment motion under review. See Toys, Inc. F.M. Burlington Company d/b/a/ Burlington Square, 155 Vt. 44, 48 (1990) (where both parties are seeking summary judgment, both parties are entitled to these benefits when the opposing party's motion is being judged). With this caution in mind, we note the following material facts, all of which are undisputed unless otherwise noted.

**Factual and Regulatory Background**

1. SBI owns property located at 883 and 865[1] College Parkway in Colchester, in the GD-1 district.[2]

2. On October 18, 2002, SBI filed an application with the DRB for conditional use review of what it described as "a new 3,600 s.f. convenience store and gas station" (the "2002 use application"). The proposed "convenience store and gas station" project included a 22′ by 67′ canopy over the gasoline pumps. SBI noted in its cover letter for the 2002 use application that "[s]ince it is our understanding that the Development Review Board has concerns related to the construction of new gas stations within this area, we are submitting [SBI's] application for Conditional Use only at this time. Application for Site Plan Approval will follow Conditional Use approval." Attach. F to Applicant's Mot. for Summ. J. The record reveals no reply from the Town or other parties to this suggested application procedure.

3. SBI asserts that Town planning officials encouraged SBI to first seek conditional use approval before it sought site plan approval for its proposed project. Neither the Town nor Cumberland Farms contest this factual representation, although Cumberland Farms contests the relevancy and legal significance to this proceeding of the Town officials' direction to SBI in the course of its 2002 use application.

4. On November 13, 2002, the DRB denied SBI's application for conditional use approval. SBI appealed to the Environmental Court. SBI's appeal of the DRB's denial to this Court was assigned Docket No. 281-12-02 Vtec.

---

[1] The street numbers assigned to SBI's property appear to have changed since the 2002 use application. We suspect this change was due to the implementation of E-911 services several years ago by all Vermont municipalities. We have adopted the street numbers reflected in the DRB's decision of April 26, 2006, even though SBI lists its property as being located at "162 and 166 Collage Parkway" in its Statement of Material Facts, which we suspect was the original street address when SBI acquired the property. Cumberland Farms does not dispute the street numbers listed in the DRB Decision. We invite the parties to correct any error on this point.

[2] It appears that the zoning district in which SBI's property lies may have changed from GD-1 to GD-2, but as the relevant language from the 2005 Ordinance is the same for both districts, we need not resolve the discrepancy.

5.     In Docket No. 281-12-02 Vtec, the Environmental Court held that a convenience store with gasoline sales was not a permitted use in the GD-1 district, and further held that the proposed project did not qualify as a conditional use.  SBI appealed to the Vermont Supreme Court.

6.     On May 5, 2005, the Supreme Court reversed the legal determinations of this Court, holding that, under the zoning regulations existing at the time of the application,[3] conditional use approval was not required for a convenience store with gasoline pumps in the GD-1 district, because such a use was permitted under the 2002 Regulations.

7.     On October 4, 2005, new zoning regulations[4] went into effect in Colchester.  The 2005 Regulations do not allow a convenience store "with gasoline sales" as either a permitted or conditional use in the GD-1 or GD-2 districts.

8.     On November 14, 2005, SBI filed a site plan application with the DRB (the "2005 site plan application").

9.     The project proposed by SBI in its 2005 site plan application does not appear to differ in any material respect from the project proposed in its 2002 use application.

10.    On April 12, 2006, the DRB decided to review the site plan application under the zoning regulations that were in effect when the conditional use application was submitted on October 18, 2002.

11.    On April 18, 2006, the DRB voted to approve SBI's 2005 site plan application, with conditions.

12.    On April 26, 2006, the DRB issued its Order and Findings, granting approval for SBI's 2005 site plan application with numerous conditions, including Condition 3(a), which is the primary focus of SBI's appeal.  Condition 3(a) states that "[t]he store shall be revised to not exceed 2,000 total square feet as measured from exterior wall to exterior wall."

13.    On May 10, 2006, SBI appealed from the DRB's Order and Findings dated April 26, 2006, "as they pertain to" Condition 3(a).

14.    On May 10, 2006, Cumberland Farms cross-appealed from the DRB's Order and Findings dated April 26, 2006.

---

[3]  Supplement 15 to the Town of Colchester Zoning Regulations and Official Zoning Map (effective Sept. 9, 2002) ("2002 Regulations").
[4]  Supplement 18 to the Colchester Zoning Regulations (effective Oct. 4, 2005) ("2005 Regulations").

**Discussion**

The parties' various memoranda suggest that all issues preserved for our review in this de novo appeal are contained in the following four topics, which we address in turn:

## I. Preclusive Effect of the May 5, 2005 Supreme Court Decision

Cumberland Farms argues in its motion for summary judgment that site plan approval must be denied as a matter of law, because site plan review includes use review and a convenience store with gasoline sales is neither a permitted nor a conditional use under the zoning regulations in effect at the time of SBI's 2005 site plan application. SBI argues in response that the question of whether the proposed convenience store with gasoline sales is an allowed use in the GD-1 district was resolved by the Supreme Court in its May 5, 2005 decision. See SBI's Mem. in Support of Mot. for Summ. J. at 3 (stating that Cumberland Farms "is barred from challenging [SBI's] right to construct a convenience store with gasoline pumps by the doctrines of res judicata, 'the law of the case' and collateral estoppel.").

It is true that the Town revised its regulations to clarify where gas sales are permitted in conjunction with convenience stores. The Supreme Court addressed this change in law, however, ruling that despite the fact that "the Town has now rewritten the definition of convenience store . . . [t]his case is governed by the regulations existing [in 2002]" and those regulations allow a convenience store with gasoline pumps as a permitted use in the GD-1 district. In re Appeal of Sisters and Brothers Investment Group, LLP, Docket No. 2004-495 at 3–4 (2005) (three-justice panel, unpublished). Thus, while future applications would be governed by the revised zoning regulations, the Supreme Court determination that SBI's proposed project is a permitted use is the final, controlling use determination.

The 2002 Regulations do not apply, however, to SBI's 2005 site plan application. See In re Appeal of Jolley Associates, 2006 VT 132, ¶ 17 (concluding that applicant had a vested right to consideration of its conditional use application under the Town's old bylaws, but applicant's site plan application must be considered under the bylaws in effect at the time that the site plan application was filed).

Our analysis does not end there, however, as is revealed by a close reading of the Jolley Associates decision. Site plan review often requires a determination as to whether the proposed use is a permitted use. Such is true of the 2005 Regulations that govern SBI's site plan application here; such was true of the Town of Shelburne Zoning Regulations at issue in Jolley

<u>Associates</u>. <u>Id</u>. at ¶ 5.  SBI is now in the awkward position of having been awarded that positive determination, as a consequence of its successful appeal to the Supreme Court.  But in the intervening time from when SBI submitted its use application to when it received a final determination from the Supreme Court, the Town lawfully amended its zoning regulations, including a specific revision which made SBI's proposed project a non-permitted use under the revised zoning regulations.

The predicament SBI now faces was anticipated and commented upon by the Supreme Court in <u>Jolley</u>, where the Court noted that it "would be incongruous to require that the applicant fully litigate its [use] application before it has filed [its site plan] application."[5]  While the 2002 Regulations applicable to SBI's prior use application do not expressly direct the filing of use and site plan applications in series, we conclude that it was reasonable for SBI to conclude that that is precisely what they had been directed to do for their project.

SBI believed in 2002 that it had to first seek and obtain conditional use approval before applying for site plan approval.  See SBI's cover letter to its application for conditional use review, Attach. F to SBI's Mot. for Summ. J. ("Since it is our understanding that the [DRB] has concerns related to the construction of new gas stations within this area, we are submitting [SBI's] application for Conditional Use only at this time.  Application for Site Plan Approval will follow Conditional Use approval.").

Site plan approval is required for both permitted and conditional uses under both the old and new regulations, see 2002 Regulations § 1803 and 2005 Regulations § 8.03.  But the timing of such approval is unclear under the 2002 Regulations. While the 2005 Regulations explicitly provide for combined review of conditional use and site plan applications, see 2005 Regulations § 8.04(C) implementing 24 V.S.A. § 4462, the 2002 Regulations are not so clear.  2002 Regulations § 1803 relating to site plan review provides only that the "[p]roposed site plans shall conform to the Town Master Plan and all bylaws of the Town including the Town Zoning Regulations."  2002 Regulations § 1803(2)(l).

We conclude that within the context of the undisputed facts here and the vagueness of the 2002 Regulations on this point, SBI's failure to submit a site plan for approval in 2002 is excusable, thereby entitling SBI to receive the benefit of the Supreme Court's final adjudication

---

[5] <u>Jolley Associates</u> at ¶ 14.  The undersigned has struggled to properly interpret the <u>Jolley Associates</u> decision.  The insertions to this quotation are made with the desire to properly represent the legal conclusion the Supreme Court was announcing in <u>Jolley Associates</u>.

that SBI's proposed project is a permitted use, which determination SBI may also rely upon in the 2005 review of its site plan application. In making this determination, we have also relied upon SBI's uncontested representation that in 2002 "[SBI] wanted to obtain site plan review" but "the Colchester Planning and Zoning Office advised [SBI] that it had to apply for conditional use before its project could proceed." SBI's Mem. in Support of Mot. for Summ. J. at 1.

The question of whether a convenience store with gasoline sales is allowed in the GD-1 district under the 2002 Regulations was definitively settled by the Supreme Court's May 5, 2005 decision, which also determined that SBI's use application must be reviewed under the 2002 Regulations. Thus, we conclude that in the course of our review of SBI's site plan application under the 2005 Regulations, SBI retains a vested right to the determination that its proposed project, unchanged from its 2002 use application, is a permitted use, and such determination controls within the context of the review of its current site plan application. See Jolley Associates at ¶¶ 14 and 17.

It is true, as Cumberland Farms argues, that claim and issue preclusion do not apply here, because Cumberland Farms was neither a party nor in privity with a party in the conditional use appeal. However, Cumberland Farms, as an interested person, is bound by the final determination of the Supreme Court regarding the conditional use issue, and may not contest, either directly or indirectly, that determination here. 24 V.S.A. § 4472(a) and (d). Stated another way, the issue of whether SBI's proposed use is allowed in the district has been carved out of the site plan review process conducted under the 2005 Regulations. Section 4472 is broader than claim and issue preclusion, in that under it persons who were not parties to a prior appeal can be bound by the final determination in that appeal. Thus, even those interested persons who "win" at the municipal level are well advised to participate in any appeal of that municipal decision, as they will be bound by the final Court determination on appeal.

Cumberland Farms' motion for summary judgment must therefore be denied on the issue of whether the review of SBI's site plan application must include a determination that its proposed use is not allowed under the applicable zoning regulations. We conclude that while the applicable precedent of Jolley Associates requires that SBI's site plan application be reviewed under the 2005 Regulations, SBI's successful appeal of its use application controls the determination of whether its proposed project is a lawful use. Given that the Supreme Court

determination governs the legality of the use SBI proposes for its property in each of its applications,[6] SBI's motion for summary judgment must be granted in that respect.

## II.     2000 Square Feet of Gross Floor Area

In its Order dated April 26, 2006 (the "DRB Order"), the DRB approved SBI's site plan application with numerous conditions, including Condition 3(a), which states that "[t]he store shall be revised to not exceed 2,000 total square feet as measured from exterior wall to exterior wall." DRB Order at 1. SBI argues that although the proposed building contains 3,600 square feet of space, "it contains less than 2000 square feet of gross floor area designed and stocked to sell primarily food, beverages and other household goods." SBI's Mot. for Summ. J. at 1. Both the 2002 and 2005 Regulations define the term "convenience store," in relevant part, as:

> A retail store containing less than 2,000 square feet of gross floor area designed and stocked primarily to sell food, beverages, and other groceries to customers.

2002 Regulations § 101; 2005 Regulations § 12.02.

The term "gross floor area" was not a specifically defined term in the 2002 Regulations. If we were searching solely for the definition of the term "gross floor area," as that term is used in both versions of the Regulations, we could receive guidance from the definition of "floor area, gross" contained in the 2005 Regulations, which defines that term as:

> The gross area of all floors of all principal and accessory buildings on a lot, measured from the exterior face of the exterior walls, or in the case of a common wall separating two buildings, from the center line of such common walls. Gross floor area shall include such features as porches, balconies, breezeways, walkways, and raised platforms, if each is enclosed.

2005 Regulations § 12.02.

We are not, however, searching merely for the applicable definition of "gross floor area" or its derivative, "floor area, gross." The complete operative phrase within the § 12.02 definition of convenience store is "gross floor area designed and stocked primarily to sell food, beverages, and other groceries to customers."

When attempting to determine the meaning of a zoning ordinance, we are directed to follow the rules relating to statutory interpretation and construction. In re Weeks, 167 Vt. 551, 554 (1998), citing Houston v. Town of Waitsfield, 162 Vt. 476, 479 (1994). We must first look

---

[6] As noted above, the 3,600 square foot convenience store with six gasoline filling stations proposed in SBI's 2005 site plan application is undisputed to mirror the project proposed in its 2002 use application, approved by the Supreme Court.

to the words chosen by the Town in defining this use, in context with all modifying phrases, and determine whether the plain, ordinary and commonly accepted interpretation of such words and phrases provide a clear understanding of what was the intended size limitation for convenience stores. See Wesco, Inc. v. City of Montpelier, 169 Vt. 520, 525 (1991) ("Ordinances are to be interpreted according to the basic rules of statutory construction and enforced in accordance with their plain meaning.") (citation omitted). We find the language of 2005 Regulations § 12.02 to be clear and unambiguous, and conclude that convenience stores are limited, not to 2,000 square feet in total area, but to 2,000 square feet in area devoted to the stocking and selling of groceries to customers.

We are aided in reaching this determination by two items in the record. First, we note that when SBI's use application was reviewed in 2002, no objection was raised to its proposed convenience store of 3,600 square feet, no more than 2,000 square feet of which was to be devoted to customer sales. As noted above, the 2002 Regulations under which SBI's use application was reviewed contained an identical definition for convenience stores as now appears in the 2005 Regulations. Second, it appears undisputed in the record before us that the Colchester DRB has, up to this case, consistently interpreted the size limitation on convenience stores as applying, not to the store's total square footage, but rather to that portion of the store dedicated to the stock and sale of groceries to its customers. SBI provided an example under the 2005 Regulations of the DRB's interpretation of the store size limitation by presenting its approved site plan for another convenience store, located on Macrae Road, that is to be 4,200 square feet in size.[7]

While this is a de novo proceeding, we find some persuasion in an uncontested representation of how the DRB has consistently interpreted this store size limitation, particularly since the DRB regularly is called upon to interpret and apply this term. It is lawful for a reviewing court to show some deference to the legal interpretation of a regulation by the body which has had some role in drafting the provision and is regularly charged with its interpretation. We find this historical interpretation persuasive, even in light of the fact that we are relying on it in the context of overruling the DRB's most recent interpretation of the store size limitation in the present appeal. See In re Audet, 2004 VT 30 ¶ 9 (showing deference to the former

---

[7] See Affidavit of Jeremy Matosky and Exhibit B attached thereto, filed in support of SBI's motion for summary judgment.

Environmental Board in interpreting Act 250), citing In re Wal*Mart Stores, Inc., 167 Vt. 75, 80 (1997) ("Our deferential level of review, however, 'does not equate with mere judicial passivity in determining the propriety of Board interpretations of its own rules.'" (quoting In re Vitale, 151 Vt. 580, 583 (1989)).

For all these reasons, we conclude that SBI's proposed convenience store is not limited in total size to 2,000 square feet, but only to 2,000 square feet of gross area devoted to the stock and sale of "food, beverages, and other groceries to customers."

### III.  Canopy

Cumberland Farms argues in its motion for partial summary judgment that even if a convenience store with gasoline sales is an allowed use in the GD-1 district, SBI's site plan application must be denied as to the proposed 22′ by 67′ canopy over the gasoline pumps, because the proposed canopy is a second principal structure. We disagree.

The canopy is clearly a structure, as that term is defined in 2005 Regulations § 2.08. The question before the Court is whether the canopy is a principal structure or an accessory structure. The 2005 Regulations defines the term "accessory building or structure" as a "structure, the use of which is incidental to the principal use of the premise" and defines the term "building, principal" as the "primary building on a lot or the building that houses the primary use." 2005 Regulations § 12.02.

This Court has previously held that a canopy over gasoline pumps may be a second principal structure, see In re: Appeal of Jolley Associates, Docket No. 118-8-01 Vtec (Vt. Envtl. Ct., May 3, 2002), slip op. at 3 (concluding that where the proposal was for multiple uses, "the canopy is the principal structure for the gasoline use, and . . . the building is the principal structure for the other two uses."[8]). Here, however, only one use is proposed for the property: a convenience store with gasoline sales. 2005 Regulations Table A, § 2.111. The canopy proposed by SBI is not a second principal structure serving a 'gasoline sales' use as in Jolley, but rather is an accessory structure serving the 'convenience store with gasoline sales use' indicated in Table A of the 2005 Regulations.

We note that the proposed 1,474 square foot canopy has less than half the area of the proposed 3,600 square foot building, whereas in Jolley the 80′ by 24′ canopy was "comparable in area to the square footage of the building allocated to the convenience store use plus the

---

[8]  The "other two uses" consisted of a restaurant and a convenience store.

payment counter at which the pumps were controlled." Jolley, Docket No. 118-8-01 Vtec at 3. The smaller size of the canopy proposed by SBI emphasizes its subordinate, accessory role, cf. In re: Appeal of Rouleau, Docket Nos. 231-12-04 Vtec; 28-2-05 Vtec; 29-2-05 Vtec; 192-9-05 Vtec; and 193-9-05 Vtec (Vt. Envtl. Ct., Nov. 17, 2006), slip op. at 12 ("the existing house . . . is too large to be considered to be subordinate to any principal building that could be built").

The 2005 Regulations contain a number of restrictions on the types of accessory structures permitted on a property. 2005 Regulations § 2.09. We cannot determine from the record before us whether it is disputed that SBI's proposed canopy satisfies § 2.09. But the classification of the proposed canopy as an accessory structure, and not a principal structure, is clear, based upon the undisputed facts before us, when applied to 2005 Regulations § 12.02.

## IV.    Remand[9]

The DRB voted in a deliberative session on April 12, 2006, to hear SBI's site plan application "pursuant to the Zoning Regulations that were in effect on October 18, 2002 (Supplement 15) [when] the Conditional use application was submitted." DRB Order at 4. That was an error. As discussed above, SBI's 2005 site plan application should have been reviewed under the regulations in effect at the time the application was filed. However, we decline to order a remand, as we have the jurisdictional authority in this de novo appeal to review the site plan application under the applicable 2005 Regulations, even though the DRB failed to do so below. See Stowe Highlands PRD, Docket No. 184-8-06 Vtec (Vt. Envtl. Ct., Nov. 2, 2006), slip op. at 2 ("In a de novo appeal, this Court stands in the place of the decision maker below, and looks anew at the application as if no decision had been rendered below."). We know of no restriction on the powers of this Court, when reviewing the same application as presented to the municipal panel, to apply appropriate, though different, legal precedent. We therefore decline to exercise our discretion by remanding the pending site plan application to the DRB, as it appears certain that this Court will be called upon to ultimately make the necessary legal determinations.

---

[9] This last issue concerning a need for remand was not raised in the parties' cross-motions for summary judgment, but in a filing by Cumberland Farms entitled "Suggestion of a Need for Remand." Such a filing is neither a motion nor a request, and therefore is not the usual vehicle for a party to request a Court ruling. It appears that the purpose of the "suggestion" is to remind the Court of its authority to order a remand on its own motion pursuant to V.R.E.C.P. 5(i). We note that such a reminder is unnecessary. Suggestions regarding rulings or orders of the Court are properly made in the context of motions or requests, and responses to them, upon which the Court may rule.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that SBI's motion for summary judgment is **GRANTED** in the following respects:

1. SBI has a vested right to the use determination made by the Supreme Court;

2. SBI's proposed convenience store is only limited by the 2005 Regulations to contain no more than 2,000 square feet of "gross floor area designed and stocked primarily to sell food, beverages, and other groceries to customers;" and

3. The 2005 Regulations define SBI's proposed canopy as an accessory structure and not a principal structure.

Cumberland Farms' motions for summary judgment are **GRANTED**, to the extent that SBI's pending site plan application should be reviewed in accordance with the zoning regulation in effect when that application was filed (i.e.: the 2005 Regulations and not the 2002 Regulations), subject however to SBI's vested right to use approval of the proposed project. In all other respects, all pending motions are **DENIED**.

We are now left to ponder what remains for this Court to adjudicate. We need the parties' assistance in that regard, particularly in light of the broad language used in Cumberland Farms' second Question. It is unclear from the record before us whether the factual determinations made by the DRB (and left unappealed) are sufficient to render positive conclusions under the applicable site plan review criteria contained in 2005 Regulations § 8.07[10] and the limitations placed on accessory structures in 2005 Regulations § 2.09. We therefore direct the parties to file memoranda, summarizing their respective positions on such questions, as well as their estimates of needed trial time for the Court to take evidence at a merits hearing, **all before Friday, March 23, 2007**. The Court encourages the parties to confer and determine whether trialable issues remain, and whether the parties can reach an agreement, such that the issues needing the Court's adjudication may be reduced.

Done at Berlin, Vermont this 21st day February, 2007.

_____
Thomas S. Durkin, Environmental Judge

---

[10] Compare with site plan standards in 2002 Regulations § 1803.2, upon which the DRB rendered its legal conclusions.